IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

GARLOCK SEALING TECHNOLOGIES LLC,
et al.,

          Debtors.[1]

Case No. 3:17-cv-00275-GCM

## ORDER (A) CONFIRMING THE MODIFIED JOINT PLAN OF REORGANIZATION OF GARLOCK SEALING TECHNOLOGIES LLC, ET AL. AND OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC, (B) ADOPTING THE BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND (C) ISSUING ASBESTOS CHANNELING INJUNCTION

WHEREAS the above-captioned Debtors (collectively, the "**Debtors**"), together with the

Official Committee of Asbestos Personal Injury Claimants (the "**Committee**"), the Future

Asbestos Claimants' Representative, the Ad Hoc Coltec Future Asbestos Claimants'

Representative, and the Ad Hoc Coltec Asbestos Claimants Committee (together with the

Debtors, the "**Plan Proponents**") proposed the Modified Joint Plan of Reorganization of Garlock

Sealing Technologies LLC, et al. and OldCo, LLC, Proposed Successor By Merger to Coltec

---

[1] The Debtors in these jointly administered cases are Garlock Sealing Technologies LLC ("**GST**"), Garrison Litigation Management Group, Ltd. ("**Garrison**"), The Anchor Packing Company ("**Anchor**"), and OldCo, LLC.

Industries Inc (as it may be further modified hereafter in accordance with its terms, this Confirmation Order, and the Bankruptcy Code, and as modified up to and including the modifications on June 9, 2017, the "**Plan**");[2]

WHEREAS on July 29, 2016, the Bankruptcy Court entered the Order Approving Disclosure Statement and Establishing Confirmation Procedures (Docket No. 5445) (the "**Solicitation Procedures Order**"), by which the Bankruptcy Court, among other things, (1) established procedures for the solicitation and tabulation of votes to accept or reject the Plan; (2) approved the Disclosure Statement as to GST, Garrison, and Anchor; and (3) scheduled a hearing to consider confirmation of the Plan to commence on May 15, 2017 (the "**Confirmation Hearing**");

WHEREAS fifteen affidavits of service were filed by Rust Consulting/Omni Bankruptcy (the "**Balloting Agent**") (Docket Nos. 5486, 5516, 5517, 5518, 5524, 5526, 5546, 5561, 5562, 5563, 5578, 5579, 5602, 5603, and 5623) respecting service of Solicitation Packages as provided by the Solicitation Procedures Order;

WHEREAS an affidavit from the President of Kinsella Media was filed by the Debtors with the Bankruptcy Court on May 8, 2017 regarding, *inter alia*, successful completion of the notice program approved in the Solicitation Procedures Order (Docket No. 5919);

WHEREAS the Balloting Agent filed the Declaration of Catherine Nownes-Whitaker of Rust Consulting/Omni Bankruptcy Regarding Certification of Ballots Cast With Respect to Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al. and OldCo,

---

[2]  Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Plan. For the avoidance of doubt, this Confirmation Order shall be interpreted and construed in accordance with the provisions of Section 1.2 of the Plan. Unless otherwise indicated, citations to the "Docket" refer to the Bankruptcy Court docket.

LLC, Proposed Successor By Merger to Coltec Industries Inc (Docket No. 5627) (the "**Ballot Certification**");

WHEREAS, as indicated in the Ballot Certification, every impaired class of claims and interests entitled to vote on the Plan voted to accept the Plan;

WHEREAS, as indicated in the Ballot Certification, Class 5 (Asbestos Claims) accepted the Plan by 95.85% in number and 95.80% in dollar amount, and Class 9 (GST/Garrison Equity Interests) accepted the Plan by 100% in number and 100% in dollar amount;

WHEREAS on December 2, 2016, Debtors filed the Notice of Filing of First Amendment to Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al., and OldCo, LLC, Proposed Successor by Merger to Coltec Industries Inc, Dated May 20, 2016 (As Modified on June 21, 2016 and July 29, 2016) (Docket No. 5594);

WHEREAS the objection deadline for objecting to the confirmation of the Plan in the GST, Garrison, and Anchor cases was set for December 9, 2016, and objections to the Plan were filed by the Office of the United States Bankruptcy Administrator for the Western District of North Carolina (the "**Bankruptcy Administrator**") (Docket No. 5608); Employers Mutual Casualty Company ("**Employers Mutual**") (Docket No. 5612); Century Indemnity Company ("**Century**") (Docket No. 5616); and Travelers Casualty and Surety Company and the Travelers Indemnity Company (collectively, "**Travelers**") (Docket No. 5617);

WHEREAS the Coltec Restructuring contemplated by the Plan was completed on December 31, 2016;

WHEREAS OldCo, LLC, successor by merger to Coltec Industries Inc as a result of the Coltec Restructuring, filed its petition on January 30, 2017;[3]

---

[3]    In the remainder of this Order, "**Coltec**" refers to Coltec Industries Inc prior to the Coltec Restructuring, and OldCo, LLC following the Coltec Restructuring.

WHEREAS the deadline for objecting to confirmation of the Plan in the Coltec case was set for March 24, 2017, and objections to the Plan were filed by Century (Docket No. 5770), Travelers (Docket No. 5769 and 5771), and Quincy Compressor LLC and Atlas Copco (China) Investment Company Ltd. ("**Atlas Copco**") (Docket No. 5767);

WHEREAS the Debtors filed a brief in support of confirmation of the Plan (Docket No. 5839) (the "**Confirmation Hearing Brief**");

WHEREAS on May 8, 2017, the Committee filed its Pre-Hearing Memorandum on the "Best Interests" Test for Confirmation of the Modified Joint Plan of Reorganization (Docket No. 5915) (the "**Committee Pre-Hearing Memorandum**");

WHEREAS Debtors filed further amendments to the Plan on April 3, 2017 and May 14, 2017 (Docket Nos. 5795 and 5951 respectively);

WHEREAS on May 19, 2017, Debtors filed the Notice of Filing of Supplement to Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al., and OldCo, LLC, Proposed Successor by Merger to Coltec Industries Inc, Dated May 20, 2016 (As Modified on June 21, 2016, July 29, 2016, December 2, 2016, April 3, 2017, May 14, 2017, and May 19, 2017) (Docket No. 5965);

WHEREAS on June 8, 2017, Debtors filed the Notice of Filing of Supplement to Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al., and OldCo, LLC, Successor by Merger to Coltec Industries Inc, dated May 20, 2016 (as modified on June 21, 2016, July 29, 2016, December 2, 2016, April 3, 2017, May 14, 2017, and May 19, 2017 (District Court Docket No. 10);

WHERAS on June 9, 2017, Debtors filed the Notice of Filing of Supplement to Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al., and OldCo, LLC,

4

Successor by Merger to Coltec Industries Inc, dated May 20, 2016 (as modified on June 21, 2016, July 29, 2016, December 2, 2016, April 3, 2017, May 14, 2017, May 19, 2017, June 8, 2017, and June 9, 2017) (District Court Docket No. 13);

WHEREAS the following declarations were submitted in support of the Plan (the "**Declarations**"): Declaration of Richard L. Magee in Support of Confirmation of the Modified Joint Plan of Reorganization (Docket No. 5910); Declaration of J. Milton Childress in Support of Confirmation of the Modified Joint Plan of Reorganization (Docket No. 5911); Declaration of Timothy J. Dragelin in Support of Joint Plan of Reorganization (Docket No. 5912); Declaration of Charles E. Bates, Ph.D. (Docket No. 5913); Declaration of Joseph W. Grier, III (Docket No. 5914); Declaration of Elihu Inselbuch (Docket No. 5916); Amended Affidavit of Shannon R. Wheatman, Ph.D Regarding Implementation of Plan Notification Program (Docket No. 5374) Affidavit of Shannon R. Wheatman, Ph.D Regarding Implementation of Plan Notification Program (Docket No. 5919); Declaration of Dr. Jorge Gallardo-Garcia in Support of Confirmation of the Modified Joint Plan of Reorganization (Docket No. 5920); Declaration of Satyra L. Riggins in Support of Confirmation of the Modified Joint Plan of Reorganization (Docket No. 5921); Declaration of Elizabeth Barry in Support of Confirmation of the Modified Joint Plan of Reorganization (Docket No. 5922); Declaration of Catherine Nownes-Whitaker in Support of Confirmation of the Modified Joint Plan of Reorganization (Docket No. 5923); Declaration of Mark A. Peterson, Ph.D. (as corrected, Docket No. 5926-1); and Declaration of Bradley M. Rapp (as corrected, Docket No. 5927-1);

WHEREAS on May 15, 2017, the Bankruptcy Court heard the Plan Proponents' request to confirm the Plan and enter the Asbestos Channeling Injunction, and determined to recommend these Findings of Fact and Conclusions of Law to this Court;

WHEREAS this Court has received and considered *de novo* the testimony and other evidence presented by the Plan Proponents at the Confirmation Hearing;

WHEREAS the Court has reviewed the Plan, the Disclosure Statement, the Solicitation Procedures Order, the Ballot Certification, the Affidavits of Service, the Publication Affidavit, the objections, the responses thereto, the statements of counsel, briefs, the Declarations, the Confirmation Hearing Brief, and all other testimony and evidence admitted as part of the Confirmation Hearing; and

WHEREAS the Findings of Fact and Conclusions of Law herein establish just cause for the relief granted herein;

NOW, THEREFORE, based on this Court's review of the Plan, the Disclosure Statement, the Solicitation Procedures Order, the Ballot Certification, the Affidavits of Service, the Publication Affidavit, the objections, the responses thereto, the statements of counsel, briefs, the Declarations, the Confirmation Hearing Brief, the Committee Pre-Hearing Memorandum, and all other testimony and evidence admitted as part of the Confirmation Hearing, and upon the record of these Chapter 11 Cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby found and determined that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052, made applicable to this matter pursuant to Fed. R. Bankr. P. 3015(f) and 9014(c). To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**I.      Jurisdiction, Venue, and Core Proceeding**

1.    This Court has jurisdiction over the Debtors' Chapter 11 Cases in accordance with 28 U.S.C. §§ 157(d), 1334(a) and 1334(b). Venue of these Chapter 11 Cases is proper under 28 U.S.C. §§ 1408 and 1409. Each of the Debtors was and is qualified under § 109 of the Bankruptcy Code to be a debtor in a Chapter 11 case and are proper co-proponents of the Plan under § 1121(a) of the Bankruptcy Code.

## II.    Judicial Notice

2.    This Court takes judicial notice of the dockets of these Chapter 11 Cases and all related adversary proceedings maintained by the Clerk of the Bankruptcy Court, the Clerk of the District Court, or their respective duly appointed agents, including without limitation, all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made at the hearings held before the Bankruptcy Court or the District Court during the pendency of these Chapter 11 Cases, including the Confirmation Hearing.

## III.    The Debtors and Asbestos Litigation Against the Debtors

### A.    *General Overview of the Debtors*

3.    GST, a North Carolina limited liability company, and Garrison, a North Carolina corporation, were wholly owned subsidiaries of Coltec Industries Inc at the time GST and Garrison filed their Chapter 11 petitions. Coltec Industries Inc, in turn, was wholly owned by EnPro Industries, Inc. ("**EnPro**"). Following consummation of the Coltec Restructuring described in more detail below (*see* ¶¶ 32-34 below), GST is now a wholly owned subsidiary of EnPro Holdings, Inc. and Garrison is a wholly owned subsidiary of OldCo, LLC, the successor by merger to Coltec Industries Inc. Magee Dec. ¶¶ 9-10, 12.

4.     GST's business was founded in 1887 in Palmyra, New York. GST produces and sells high performance fluid-sealing products, including gaskets and compression packing used in internal piping and valve assemblies in numerous industries. Magee Dec. ¶ 13.

5.     Garrison was formed in 1996 to manage the defense and resolution of asbestos claims against GST, Anchor and Coltec. From its inception to the Petition Date, Garrison (a) supervised a nationwide network of law firms defending asbestos claims against GST and Coltec; (b) managed the defense and resolution of asbestos claims against GST and Coltec; (c) paid judgments, settlements, and defense costs; and (d) collected insurance that covered losses associated with asbestos claims against GST. In addition to managing litigation and resolution of asbestos claims against GST, Garrison was paid fees and reimbursed expenses for managing the defense and resolution of asbestos claims against Anchor and Coltec. Magee Dec. ¶¶ 15-16.

6.     Anchor is a wholly-owned, non-operating subsidiary of Garrison. GST acquired Anchor as a wholly owned subsidiary in June 1987. For many years before GST acquired Anchor and for several years thereafter, Anchor distributed fluid sealing materials, including gaskets and packing. In 1994, Anchor ceased business operations and in 1996 GST transferred its equity interest in Anchor to Garrison. Anchor has no assets or insurance and has not paid to defend or settle an asbestos claim since 2005. Magee Dec. ¶¶ 14, 35.

7.     Some of the products produced and/or sold by GST (prior to 2001) and Anchor (prior to 1988) contained asbestos. Since the 1970s, GST and Anchor have received hundreds of thousands of claims by individuals alleging personal injuries or wrongful death related to exposure to asbestos from such products. Prior to the Petition Date, GST paid approximately $1.37 billion in indemnity payments and hundreds of millions in defense costs to resolve these claims. Magee Dec. ¶ 26; Inselbuch Dec. ¶ 12 & Ex. 1.

8.     OldCo, LLC is successor by merger to Coltec Industries Inc. Some of the businesses operated by Coltec and its predecessors, apart from GST, manufactured or distributed products that contained asbestos, principally equipment with asbestos-containing components, such as gaskets and packing, made by other companies. Such equipment often, though not exclusively, used components manufactured by GST. As a result, since approximately 1992, these Coltec businesses have received tens of thousands of claims by individuals alleging personal injuries or wrongful death caused by exposure to asbestos. The businesses operated by Coltec and its predecessors that received such claims include Fairbanks Morse Engine, Fairbanks Morse Pump, Quincy Compressor, Central Moloney, France Compressor, Delavan, and Farnam. Magee Dec. ¶¶ 36-39.

9.     Claimants who sued Coltec businesses generally also sued GST. Although Coltec paid approximately $7.9 million to defend claims against Coltec, Coltec never paid any money to settle an asbestos personal injury claim. Claimants routinely agreed to dismiss Coltec asbestos claims without payment when they reached settlements with GST with respect to their GST asbestos claims. Magee Dec. ¶¶ 51-53.

10.    As a result of the burden of current and future asbestos claims, GST, Garrison, and Anchor filed their petitions on June 5, 2010, in order to seek a full and final resolution of asbestos claims against them. As described further below, Coltec filed its petition on January 30, 2017, for the same purpose and pursuant to the Comprehensive Settlement described below. Magee Dec. ¶¶ 9, 11, 55-56.

**B.     *GST's Asbestos Litigation History***

11.    For decades prior to the Petition Date, GST received thousands of claims each year from individuals who alleged they suffered from asbestos-related disease caused in part by

GST's products. GST was also subject to claims from co-defendants and others seeking to recover from GST with respect to asbestos claims on theories of contribution, indemnity, or other similar theories. Since 1975, plaintiffs have named GST (and/or Anchor) in approximately 900,000 asbestos cases. GST has disputed its liability for all of these asbestos claims and has never admitted liability for any claim. Magee Dec. ¶¶ 26-27.

12.     Throughout its history, GST has resolved the vast majority of asbestos claims filed against it by dismissal or settlement rather than by verdict. Out of the 900,000 cases, only approximately 250 cases have resulted in verdicts, the majority of those in GST's favor. Magee Dec. ¶ 29.

13.     GST's asbestos litigation has principally involved two asbestos-containing sealing products: compressed asbestos sheet gaskets and asbestos packing. Magee Dec. ¶ 30.

14.     In addition to its own products, GST also acquired four companies that sold sealing products substantially equivalent to products made and sold by GST, all of which were eventually merged into GST—Belmont Rubber & Packing Co. ("Belmont"), Crandall Packing Company, Dealers' Steam Packing Company, and U.S. Gasket Company. Garrison received approximately 8,500 complaints naming Belmont, despite its merger into GST in 1968. Nearly all of these complaints were filed before 2004, and all but 62 also named GST. None of the Belmont claims were resolved by payment, but were resolved only by dismissal or in connection with payments on claims against GST itself. Magee Dec. ¶¶ 31-32.

15.     As of the Petition Date, there were approximately 95,000 asbestos claims pending against GST in state and federal courts across the country. Approximately 82,000 of these claims alleged non-malignant conditions or did not indicate an alleged disease or condition.

Approximately 13,000 claims alleged mesothelioma, lung cancer, or other cancer. Magee Dec. ¶ 33.

### C.   *Corporate History of Coltec*

16.     Coltec was a longstanding, diversified manufacturer that was variously known in prior years as Penn-Texas Corporation (until 1959), Fairbanks Whitney Corporation (until 1964), and Colt Industries Inc (until 1990). Colt Industries Inc then changed its name to Coltec Industries Inc on May 3, 1990. Coltec merged with Runway Acquisition Corporation, a subsidiary of Goodrich Corporation ("Goodrich") on July 12, 1999 and survived as a wholly owned subsidiary of Goodrich. Magee Dec. ¶¶ 17-19.

17.     EnPro was incorporated on January 11, 2002 as a wholly owned subsidiary of Goodrich and is the sole parent entity of Coltec. On May 31, 2002, the shares of EnPro were distributed to the shareholders of Goodrich, and EnPro became a separate public company, with Coltec continuing as its direct, wholly-owned subsidiary. Magee Dec. ¶ 20.

18.     Through its divisions and a number of direct and indirect foreign and domestic subsidiaries, Coltec historically operated a broad and diverse range of engineered industrial products manufacturers. Magee Dec. ¶ 17.

### D.   *Coltec's Asbestos Litigation History*

19.     Claimants first began suing Coltec no later than 1992. Plaintiffs named either Coltec or businesses for whose conduct Coltec or one of its predecessors was alleged to be responsible, including "Fairbanks Morse," "Fairbanks Morse Engine," "Fairbanks Morse Pump," "Quincy Compressor," "Central Moloney," "France Compressor," "Delavan," and "Farnam." Magee Dec. ¶¶ 37, 39.

20.  **Fairbanks Morse**. Plaintiffs named "Fairbanks Morse" or "Fairbanks Morse Engine" ("**FME**") in complaints, alleging exposure to asbestos from components, principally gaskets, in engines and locomotives. Many of these gaskets were likely manufactured by GST, although not all of them were. The Fairbanks Morse business was founded in the nineteenth century. From the 1930s, the business manufactured engines at its Beloit, Wisconsin plant. During World War II, FME engines were used in submarines for the U.S. Navy, as well as in destroyers and landing ships. FME engines were also used in power plants and locomotives. Coltec's predecessor acquired control over Fairbanks Morse & Co. in 1958, and Coltec owned it as a subsidiary until 1986, when the successor to Fairbanks Morse merged with Coltec (then known as Colt Industries Inc). Magee Dec. ¶¶ 40-41.

21.  **Fairbanks Morse Pump**. Plaintiffs named "Fairbanks Morse Pump" ("**FMP**") alleging exposure to asbestos from components in pumps, principally gaskets and packing. Many of the gaskets and packing were likely manufactured by GST, although not all of them were. The Fairbanks Morse business described above also had a pump division, which manufactured water-based pump systems in Kansas City, Kansas. Magee Dec. ¶ 42.

22.  The FMP business was in a Coltec subsidiary in 1985 when that subsidiary sold the assets of the FMP division to FMPD Purchasing Corporation (renamed Fairbanks Morse Pump Corporation ("**FMPC**")). FMPC assumed FMP's product liabilities (including any liabilities resulting from the pre-closing sale of asbestos-containing pump products), and Debtors and FMPC allege that FMPC obtained rights against Coltec's insurance. Magee Dec. ¶ 43.

23.  FMPC was acquired by General Signal Corporation in 1995, which sold the FMP assets to Pentair Inc. in 1997. SPX Corporation acquired General Signal in 1998 and merged with General Signal in 2003. FMPC remains a dormant subsidiary of a successor to SPX

Corporation, retaining any liabilities for FMP asbestos claims. Debtors and FMPC allege FMPC retained corresponding rights against Coltec insurance. Magee Dec. ¶ 43.

24.    Prior to these Chapter 11 Cases, Garrison continued to receive and defend the FMP asbestos claims. In doing so, Garrison obtained dismissals of FMP claims without payment, often as part of a settlement of GST Asbestos Claims. Magee Dec. ¶ 44.

25.    **Quincy Compressor**. Plaintiffs named "Quincy Compressor" ("**Quincy**"), alleging exposure to asbestos from components in compressors, principally gaskets. Many of those gaskets were likely manufactured by GST, although not all of them were. Coltec's predecessor acquired Quincy Inc in 1966, and the successor of that subsidiary eventually merged into Coltec, with Quincy thereafter operated as a division of Coltec. In December 2009, Coltec sold the assets of the Quincy division to Fulcrum Acquisition LLC, retaining any liability for asbestos claims. No indemnity was ever paid for a Quincy asbestos claim. Magee Dec. ¶ 45.

26.    **Central Moloney.** According to Garrison's database, plaintiffs named "Central Moloney" as a defendant in three cases. Garrison believes the suits alleged that transformers Central Moloney manufactured contained asbestos gaskets. At certain points in time, Coltec or its predecessors operated a division named "Central Moloney Transformer" or owned a subsidiary named "Central Transformer Corporation," "Central Transformer Inc," or "Central Moloney Inc." Magee Dec. ¶¶ 48, 50.

27.    **France Compressor.** Plaintiffs have named "France Compressor" as a defendant, alleging exposure to asbestos from components in compressors. Divisions named "France Products" and "France Compressor Products" were at various times operated by GST, and then after 1995 as a subsidiary of Coltec. The various entities or businesses known as "France

Compressor" made parts for compressors, not compressors, and are not believed to have marketed or manufactured any asbestos-containing products. Magee Dec. ¶ 49.

28. **Delavan.** According to Garrison's database, plaintiffs named "Delavan" (or sometimes "Delevan" or "Delavan Instruments") collectively 3,711 times, all between 1999 and 2002. The allegations in these lawsuits appear to have involved equipment that allegedly had asbestos-containing components. At certain points in time, Coltec or its predecessors operated divisions named "Delavan Gas Turbine Products," "Delavan Spray," "Delavan-Carroll," "Delavan Steel Treating" and "Delavan Power Generation" and owned subsidiaries named "Delavan Inc," "Delavan-Carroll Inc.," "Delavan-Delta, Inc.," and "Delavan Spray, LLC." Magee Dec. ¶ 46.

29. **Farnam.** According to Garrison's database, plaintiffs have named "Farnam" as a defendant 209 times, all in 1994, 2003, and 2004. Garrison believes the claims alleged Farnam was a regional distributor of asbestos-containing products, including gaskets, or manufactured asbestos-containing gaskets. At certain points in time, Coltec or its predecessors operated a division named "Farnam Sealing Systems" or owned a subsidiary named "F. D. Farnam Co.," "F.D. Farnam Inc," or "Farnam Sealing Systems Inc." Magee Dec. ¶ 47.

30. **Coltec or EnPro.** Finally, plaintiffs from time to time named Coltec or EnPro in complaints directly, usually without any particular product allegations. EnPro itself has never manufactured or sold any asbestos-containing products, and was sued derivatively based on claims against Coltec, GST, or Garrison. No indemnity was ever paid for an asbestos claim against Coltec or EnPro, and the claims were resolved only by dismissal or in connection with payments on GST Asbestos Claims. Magee Dec. ¶¶ 50-53.

31.    No indemnity was ever paid for any claim against Coltec or any of the businesses

for whose conduct Coltec or one of its predecessors was alleged to be responsible, or against

EnPro or any EnPro affiliate—except GST, Garrison, and Anchor. Claims against Coltec, EnPro,

or any of the businesses for whose conduct Coltec or one of its predecessors was alleged to be

responsible, were resolved only by dismissal or in connection with payments on GST asbestos

claims. Magee Dec. ¶¶ 50-53.

### E.    *Coltec Restructuring*

32.    In 2016, Coltec was substantially reorganized, as contemplated by the

Comprehensive Settlement by and among the Plan Proponents and EnPro (*see* ¶¶ 32-34 below).

The Coltec Restructuring was carefully negotiated and vetted by the Plan Proponents prior to

entering into the Comprehensive Settlement. The Coltec Restructuring was also conditioned on a

favorable vote by Asbestos Claimants, and was consummated after the Balloting Agent certified

that Asbestos Claimants had accepted the Plan. Magee Dec. ¶ 25.

33.    The Coltec Restructuring involved: (i) a contribution of the Fairbanks Morse

business to a new, wholly-owned subsidiary of Coltec Industries Inc and, subsequently, (ii) the

merger of Coltec Industries Inc with and into OldCo, LLC, a new wholly-owned indirect

subsidiary of EnPro, and (iii) a distribution of certain assets and liabilities of the former Coltec

Industries Inc (including all of the ownership interests in the former subsidiaries of Coltec as

acquired in the merger, excluding the Learning System assets and operations and the Garrison

Equity Interests) to EnPro Holdings, Inc., a new and wholly-owned direct subsidiary of EnPro.

OldCo, LLC (as successor to Coltec) then filed a Chapter 11 petition to implement the

Comprehensive Settlement, together with GST and Garrison, through the Plan. (Case No. 17-

BK-30140, Docket No. 1).

34. As a result of the Coltec Restructuring, GST is a wholly owned subsidiary of EnPro Holdings, Inc., and Garrison is a wholly owned subsidiary of OldCo, LLC.

## IV. The Chapter 11 Cases

### A. *The Debtors' Decision to Seek Relief Under Chapter 11*

35. GST, Garrison and Anchor (referred to collectively as the "**Garlock Debtors**") commenced their respective Chapter 11 Cases by filing petitions for relief under Chapter 11 on June 5, 2010 (Docket No. 1). The Garlock Debtors filed their cases in order to fully and finally resolve their asbestos liabilities in bankruptcy, and preserve their businesses for the benefit of Holders of Claims and Interests. Magee Dec. ¶ 56.

36. After filing their petitions, the Garlock Debtors filed an adversary proceeding complaint, *Garlock Sealing Technologies LLC, et al. v. Those Parties Listed on Exhibit B to Complaint and Unknown Asbestos Claimants* (Adversary Proceeding No. 10-03145, Bankr. W.D.N.C.), and a motion for preliminary injunction seeking an order barring asbestos claimants from pursuing claims against Coltec or any Non-Debtor Affiliate. On June 7, 2010, the Bankruptcy Court issued a temporary restraining order (Docket No. 9) and on June 21, 2010, a preliminary injunction (Docket No. 14) granting the requested relief.

37. The Official Committee of Unsecured Creditors was formed by order of the Bankruptcy Court entered June 17, 2010 (Docket No. 104).

38. The Committee was formed by order of the Bankruptcy Court entered on June 16, 2010 (Docket No. 101), and the makeup of the Committee was modified by order entered on July 20, 2010 (Docket No. 260).[4]

---

[4] The Bankruptcy Court has also, from time to time, approved the substitution of members of the Committee of GST Asbestos Claimants following the death of certain members. *See, e.g.*, Docket No. 5156.

39.     The Bankruptcy Court entered an order appointing Joseph W. Grier, III as the Future Claimants Representative ("**FCR**") on September 16, 2010 (Docket No. 512). That Order set forth the scope of the FCR's authority and obligation to act on behalf of future claimants in these Chapter 11 Cases.

**B.      *Estimation of Current and Future Mesothelioma Claims and Other Litigation***

40.     On December 9, 2010, the Bankruptcy Court entered an order (Docket No. 853) (the "**December 9 Order**") establishing a six-month period for "conducting preliminary discovery related to estimation, for purposes of formulating a plan of reorganization, of the Debtors' liability for pending and future asbestos-related claims for personal injury and wrongful death." The December 9 Order also permitted the Committee and FCR to conduct a six-month period of discovery regarding pre-petition related party transfers and a 2005 corporate restructuring that produced the Coltec Note and the Stemco Note.

41.     On December 2, 2011, the Garlock Debtors moved the Bankruptcy Court to estimate the aggregate number and amount of allowed current and future mesothelioma claims against GST and Garrison pursuant to Section 502(c) of the Bankruptcy Code (Docket No. 1683) (the "**Estimation Motion**").

42.     On April 13, 2012, the Bankruptcy Court entered the Order for Estimation of Mesothelioma Claims (Docket No. 2102) (the "**Estimation Order**") granting the Estimation Motion and setting the scope and purpose of the estimation proceeding. The Bankruptcy Court concluded that it would hold a trial to estimate allowed mesothelioma claims pursuant to Section 502(c) of the Bankruptcy Code for the purpose of determining the feasibility of any Chapter 11 plan of reorganization that might be proposed in the Chapter 11 Cases. The Bankruptcy Court

initially scheduled the estimation trial to commence on December 3, 2012 but eventually continued the trial to July 22, 2013.

43.     In the Estimation Order, the Bankruptcy Court ruled that it would consider properly supported evidence based upon both the "settlement approach," which the Committee and FCR proposed to employ for the estimation of mesothelioma claims, and the "legal liability approach," which Debtors proposed to employ.

44.     For more than two years before the estimation trial, the Garlock Debtors, Coltec, the Committee, and the FCR engaged in contentious, time-consuming, and expensive litigation regarding the proper scope of discovery and evidence supporting their respective theories of estimation.

45.     From July 22 to August 22, 2013, over seventeen trial days, the Bankruptcy Court conducted an evidentiary hearing pursuant to the Estimation Order to determine a reliable aggregate estimate of GST's present and future mesothelioma claims. The Garlock Debtors' experts projected Garlock's aggregate mesothelioma liability at not more than $125 million, and the Committee and FCR offered opinions from each of their experts estimating that GST's aggregate liability for mesothelioma claims exceeded $1 billion.

46.     That trial culminated in entry on January 10, 2014 of the Estimation Opinion, in which the Bankruptcy Court estimated GST's aggregate liability for present and future mesothelioma claims at no more than $125 million. *See In re Garlock Sealing Technologies LLC*, 504 B.R. 71, 97 (Bankr. W.D.N.C. 2014).

47.     Because of the great magnitude of mesothelioma claims in comparison to claims based on other allegedly asbestos-related diseases, the parties agreed and the Bankruptcy Court ordered that the estimation proceeding would not include any estimated liability for non-

mesothelioma claims. *Id.* at 75. The Bankruptcy Court also excluded asbestos-related claims against Anchor from its estimate.

48.    The Committee took the position that the Estimation Opinion was interlocutory, and stated its intention to appeal from that decision once it became a final order or otherwise ripe for appellate review. The Debtors maintain that the Estimation Opinion is correct and is the law of the case.

49.    On June 4, 2014, the Committee moved the Bankruptcy Court to reopen the record of the estimation proceeding to permit the Committee to present supplemental evidence after taking additional discovery from the Garlock Debtors and then to seek modification of the Estimation Opinion based on such additional evidence. (Docket Nos. 3725 and 3726). The Garlock Debtors and Coltec objected. (Docket Nos. 3725 and 3726). On December 4, 2014, the Bankruptcy Court denied the Committee's motion. (Docket. Nos. 4260 and 4274; 12/4/2014 transcript).

50.    Prior to issuance of the Estimation Opinion, GST and Garrison filed lawsuits against several law firms that represented personal injury claimants to whom GST and Garrison paid money prior to the Petition Date as a result of settlements that GST and Garrison contend were fraudulently obtained (the **"Adversary Proceedings"**): (i) *Garlock Sealing Technologies LLC, et al. v. Chandler, et al.*, Case No. 12-03137 (Bankr. W.D.N.C.); (ii) *Garlock Sealing Technologies LLC, et al. v. Shein Law Center Ltd, et al.*, Case No. 3:14-cv-00137 (W.D.N.C.); (iii) *Garlock Sealing Technologies LLC, et al. v. Belluck & Fox, LLP, et al.*, Case No. 3:14-cv-00118 (W.D.N.C.); (iv) *Garlock Sealing Technologies LLC, et al. v. Simon Greenstone Panatier Bartlett, A Professional Corporation, et al.*, Case No. 3:14-cv-00116 (W.D.N.C.); and (v)

*Garlock Sealing Technologies LLC, et al. v. Estate of Ronald C. Eddins, et al.*, Case No. 3:14-cv-00130 (W.D.N.C.).

51. Pursuant to the December 9 Order authorizing discovery from the Garlock Debtors, Coltec, and other affiliates relating to a 2005 corporate restructuring and other pre-petition insider transactions, the Committee and FCR propounded multiple interrogatories and requests for production of documents on the Garlock Debtors, Coltec, other non-debtor affiliates, and certain third parties. The respondents produced voluminous documents. The discovery obtained eventually resulted in decisions by the Committee and the FCR to file their Joint Motion for Leave, Proposed Complaint, and Motion for Modification (collectively, "**ACC/FCR Motions**") (Docket No. 2150; Adv. Proc. No. 10-03145, Docket No. 33) seeking to assert breach of fiduciary duty claims against certain former managers of GST and fraudulent transfer, unjust enrichment, conspiracy to defraud, successor liability, alter ego, and other claims against the defendant entities.

52. After the filing of the ACC/FCR Motions, the Garlock Debtors filed their Motion for Order (A) Authorizing Debtors to (I) Enter into the Affiliate Tolling Agreement and (II) Enter into the Proposed Managers Tolling Agreement Pursuant to 11 U.S.C. §§ 105(a) and 363 and Bankruptcy Rule 6004 and (B) Authorizing the Debtors to Abandon Non-Affiliate Preference Claims Pursuant to 11 U.S.C. §§ 105(a) and 554(a) and Bankruptcy Rule 6007 (the "**Tolling Agreement Motion**") (Docket No. 2194). The Bankruptcy Court granted the Tolling Agreement Motion by order entered on June 4, 2012 (Docket No. 2281) and denied without prejudice the ACC/FCR Motions by order entered on June 7, 2012 (Docket No. 2292; Adv. Proc. No. 10-03145, Docket No. 51).

53.     The Garlock Debtors and the defendants named in the Proposed Complaint have continued to toll the alleged causes of action in the Proposed Complaint (the "**Tolled Claims**") by way of tolling agreements entered into after the Bankruptcy Court granted the Tolling Agreement Motion and a series of orders subsequently entered with the consent of those defendants, the Garlock Debtors, the Committee, and the FCR. The Tolled Claims are to be settled and released under Section 8.4 of the Plan.

### C.     *The Garlock Debtors' Plans*

54.     The Bankruptcy Court entered three orders during the Chapter 11 Cases extending the Garlock Debtors' exclusive periods to file and solicit acceptances of a Chapter 11 plan. By order of the Bankruptcy Court entered on May 20, 2011 (Docket No. 1349), the Bankruptcy Court granted the Garlock Debtors' final extension of (i) the exclusive period to file a reorganization plan (or plans) through November 28, 2011, and (ii) the exclusive period to solicit acceptances of a plan through and including January 26, 2012.

55.     The Garlock Debtors filed a Plan of Reorganization (Docket No. 1664) on November 28, 2011 (the "**Initial Plan**"), prior to the termination of their exclusive period to file a reorganization plan, but did not solicit acceptances of the Initial Plan. The Garlock Debtors' exclusive periods to file and solicit acceptances to a Chapter 11 plan expired January 26, 2012, but as of the date of this Order no party in interest has filed a plan other than the Plan Proponents.

56.     Along with their Initial Plan, the Debtors filed a disclosure statement (Docket No. 1666) (the "**First Disclosure Statement**") and the exhibit book related to the Initial Plan (Docket No. 1665). The Garlock Debtors filed a supplemental exhibit book on December 16, 2011 (Docket No. 1722). The Committee and FCR each filed objections to approval of the First

Disclosure Statement (Docket Nos. 1806 and 1808), to which the Debtors responded (Docket No. 1823). The Bankruptcy Court did not hold a hearing on approval of the First Disclosure Statement.

57. On May 29, 2014, in response to the Estimation Opinion, the Garlock Debtors filed the Debtors' First Amended Plan of Reorganization (Docket No. 3708), as well as the Disclosure Statement for Debtors' First Amended Plan of Reorganization (Docket No. 3710) (the **"Second Disclosure Statement"**) and the exhibit book related to the Debtors' First Amended Plan of Reorganization (Docket No. 3709). The Committee filed objections to approval of the Second Disclosure Statement (Docket Nos. 3961 and 4107), to which the Debtors responded (Docket No. 4094). The Bankruptcy Court did not hold a hearing on approval of the Second Disclosure Statement.

**D.** *The Second Amended Plan Filed by the Garlock Debtors and the FCR*

58.     On January 9, 2015, the Garlock Debtors and the FCR reached an agreement in principle on a plan that the FCR would support, resolving all GST Asbestos Claims. On January 13, 2015, the Garlock Debtors and the FCR filed the Second Amended Plan, which incorporated the agreement with the FCR. (Docket No. 4306). Magee Dec. ¶ 64; Grier Dec. ¶ 23.

59.     Although the Second Amended Plan retained the fundamental structure of the First Amended Plan, the Garlock Debtors agreed to provide increased funding for GST Asbestos Claimants, and also agreed to various changes to the CRP. Magee Dec. ¶ 64; Grier Dec. ¶ 23.

60.     Neither the Initial Plan, nor the First Amended Plan, nor the Second Amended Plan sought to resolve and treat Coltec Asbestos Claims in their entirety as a class. Magee Dec. ¶ 65; Grier Dec. ¶ 23.

61.     Confirmation proceedings on the now-superseded Second Amended Plan commenced and progressed through preliminary stages. On January 26, 2015, on motions made or supported by the Garlock Debtors and the FCR, and over the objections or limited objections of the Committee, the Bankruptcy Court entered a bar date order, establishing October 6, 2015 as the deadline (the "**Asbestos Claims Bar Date**") for filing proofs of claim for GST Asbestos Claims based on an asbestos-related disease diagnosed on or before August 1, 2014, for which lawsuits against any defendant or claims against any trust were filed on or before August 1, 2014. *See* Order Approving Disclosure Statement and Establishing Asbestos Claims Bar Date and Procedures For Solicitation, dated April 10, 2015 (Docket No. 5134). Proofs of claim for GST Asbestos Claims arising after August 1, 2014, were permitted but not required to be filed. The Bankruptcy Court also established certain solicitation and confirmation procedures, and approved a disclosure statement for the Second Amended Plan. (Docket No.4542).

62. The voting deadline on the Second Amended Plan was October 6, 2015. On December 4, 2015, the Balloting Agent reported that the holders of current GST Asbestos Claims in Class 4 had rejected the Second Amended Plan by a large margin. (Docket No. 5119). As of the Asbestos Claims Bar Date, also on October 6, 2015, 170,260 proofs of claim for current GST Asbestos Claims had been filed (with ballots cast on the Second Amended Plan being regarded as proofs of claim).

63. The Garlock Debtors announced that they would ask the Bankruptcy Court to confirm the Second Amended Plan, despite Class 4's rejection of it, in accordance with the "cramdown" provisions of the Bankruptcy Code. On October 6, 2015 and December 18, 2015, the Committee filed objections to the Second Amended Plan, contending that the plan was unconfirmable on various grounds, as did certain persons who described themselves as being at risk of malignancies and therefore as potential future GST Asbestos Claimants. (Docket Nos. 4883, 4885, 5160).

64. As of January 2016, discovery pertaining to the Second Amended Plan and the objections thereto was underway, and the parties were preparing for a contested confirmation hearing that was scheduled to commence on June 20, 2016. Additionally, the Bankruptcy Court was scheduled to hear argument, commencing on January 6, 2016, on certain cross-motions for summary judgment that the parties had filed and briefed. *See* Committee's Motion For Summary Judgment Denying Confirmation Based on Plan's Failure to Comply with Bankruptcy Code Section 524(g) (Docket No. 5071) and Motion for Partial Summary Judgment That Class 4 Claims Are Impaired and the FCR Has No Authority to Vote on the Plan (Docket No. 5069); Debtors' and FCR's Motion for Partial Summary Judgment That Section 524(g) Is Not Exclusive and the FCR Has Authority to Vote (Docket No. 5072); Opposition of the Official Committee of

Asbestos Personal Injury Claimants to the Debtors and Future Claims Representative's Motion for Partial Summary Judgment (Docket No. 5159); Debtors' and FCR's Opposition to Committee Motion for Summary Judgment on 524(g) and FCR Authority To Vote (Docket No. 5161); Debtors' Opposition to Committee Motion for Partial Summary Judgment That Class 4 Is Impaired (Docket No. 5162).

### E. *The Comprehensive Settlement and Joint Plan*

65.    On January 5, 2016, the Garlock Debtors, the Committee and the FCR jointly asked the Bankruptcy Court to order a suspension of litigation on confirmation issues related to the Second Amended Plan in order to accommodate negotiations on a fully consensual plan of reorganization.

66.    The Bankruptcy Court continued the hearing on the parties' cross motions for summary judgment from January 6, 2016, to March 1, 2016, and the parties agreed to a 30-day moratorium on discovery in the confirmation proceedings. The Bankruptcy Court also continued the hearing on the proposed confirmation of the Second Amended Plan to August 15, 2016. As negotiations progressed, the parties agreed to extend the moratorium twice and to continue the summary judgment hearings, first until March 10, 2016, and then indefinitely.

67.    In mid-February 2016, the parties reached an understanding that, for purposes of the negotiations, an *ad hoc* committee should be established for current Coltec Asbestos Claimants and that an *ad hoc* legal representative for holders of future Coltec Asbestos Claims should also participate. The Ad Hoc Coltec Asbestos Claimants Committee was formed consisting of attorneys from each of the following plaintiffs' law firms: Belluck & Fox; Cooney & Conway; The Jaques Admiralty Law Firm; Simon, Greenstone, Panatier & Bartlett; Thornton & Naumes; and The Lanier Law Firm. Each of these, other than The Lanier Law Firm, already

represented and continues to represent an Asbestos Claimant against GST on the Committee. All of the aforementioned law firms, including The Lanier Law Firm, represent Coltec Asbestos Claimants and filed claims on behalf of those individuals before the litigation was stayed in 2010. The Committee and the Ad Hoc Coltec Asbestos Claimants Committee thereafter functioned in unison in the negotiations, based on the overlapping claims histories and essential unity of interests as between GST Asbestos Claimants and Coltec Asbestos Claimants. Magee Dec. ¶ 71; Inselbuch Dec. ¶ 20(a); Grier Dec. ¶ 27.

68.     Also in mid-February 2016, Joseph W. Grier, III, the current FCR in the Garlock Debtors' Chapter 11 Cases, agreed to serve as the *ad hoc* legal representative for future Coltec Asbestos Claimants. Mr. Grier thereafter participated in the negotiations in both capacities, based on the overlapping claims histories and essential unity of interests as between GST Asbestos Claimants and Coltec Asbestos Claimants. Magee Dec. ¶ 71; Inselbuch Dec. ¶ 20(b); Grier Dec. ¶ 27.

69.     On March 17, 2016, the Garlock Debtors, Coltec, the Committee, the Ad Hoc Coltec Asbestos Claimants Committee, the FCR, the Ad Hoc Coltec Future Asbestos Claimants' Representative, and EnPro entered into the Comprehensive Settlement by signing the Term Sheet for Permanent Resolution of All Present and Future GST Asbestos Claims and Coltec Asbestos Claims. Disclosure Statement, Ex. 2; Magee Dec. ¶ 78; Inselbuch Dec. ¶ 23; Grier Dec. ¶ 32.

70.     In order to implement the Comprehensive Settlement, on May 20, 2016, the Plan Proponents filed the Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al. and OldCo, LLC, Proposed Successor by Merger to Coltec Industries Inc (Docket No. 5331) and the Disclosure Statement thereto (Docket No. 5332).

71.     The Plan will result in a permanent resolution of all GST Asbestos Claims and Coltec Asbestos Claims (together, "**Asbestos Claims**"), other than Foreign Asbestos Claims asserted outside the United States judicial system. The Plan will establish a trust under Section 524(g) of the Bankruptcy Code (as defined in the Plan, the "**Asbestos Trust**") to assume all liabilities for, and to process and pay, Asbestos Claims pursuant to the Claims Resolution Procedures ("**CRP**") attached as Exhibit B to the Plan. The Asbestos Trust will be solely responsible for resolving and paying Asbestos Claims and for paying the Asbestos Trust Expenses in accordance with the Asbestos Trust Agreement and CRP.

72.     The Asbestos Trust will be funded with the following assets: (a) $350 million in Cash contributed to the Asbestos Trust by GST or Garrison on the day immediately preceding the Effective Date; (b) $50 million in Cash contributed to the Asbestos Trust by Coltec on the day immediately preceding the Effective Date; (c) the Deferred Contribution; (d) the Option; (e) any insurance recoveries paid to the Asbestos Trust in accordance with Section 7.3.10 of the Plan; (f) the Asbestos Trust Causes of Action (as defined in Section 7.3.4 of the Plan); and (g) following the transfer or vesting of the foregoing to or in the Asbestos Trust, any proceeds thereof and earnings and income thereon.

73.     In exchange for funding the Asbestos Trust, GST, Coltec, Garrison, and the other Asbestos Protected Parties (defined in Section 1.1(21) of the Plan and listed in **Exhibit 1** to this Order) will be protected by the Asbestos Channeling Injunction that will prohibit assertion of Asbestos Claims (other than Foreign Asbestos Claims asserted outside the United States judicial system) against those parties in accordance with its terms.

74.     The Plan describes ten classes of Claims and Interests against the Debtors in Article 3. Only two of those classes are impaired: Class 5 (Asbestos Claims) and Class 9

(GST/Garrison Equity Interests). Class 5 Claims will be channeled to the Asbestos Trust and dealt with pursuant to the CRP. Class 9 Claims are to be retained by the Holders, subject to the Lien on those Equity Interests necessary to secure the Deferred Contribution to the Asbestos Trust (as described in the Plan).

75. All other classes of Claims and Interests are unimpaired by the Plan and thus deemed to have accepted the Plan.

76. The CRP are designed to (a) generate settlement offers to Asbestos Claimants that are fair, expeditious, and properly reflective of the injuries allegedly caused to injured persons by exposure to asbestos fibers or dust from Coltec Products (as defined in the CRP) or GST Products (as defined in the CRP) and (b) ensure that over the life of the Asbestos Trust present and future Asbestos Claims are treated fairly and equitably in all matters, including the payment of settlement amounts from the Asbestos Trust that are as equal as possible to other payments for similarly situated claimants in the same disease category. Inselbuch Dec. ¶¶ 52-56; Grier Dec. ¶¶ 48-65.

77. The Asbestos Trust will be administered according to the Asbestos Trust Agreement attached as Exhibit A to the Plan. The Trustee will administer the Asbestos Trust, and will be responsible for fulfilling the duties more particularly described in the Trust Agreement. Inselbuch Dec. ¶¶ 35-36; Grier Dec. ¶¶ 42-44.

78. The Trustee will be advised by the FCR and a Claimant Advisory Committee ("**CAC**") consisting initially of the nine members identified on the signature page of the Trust Agreement attached to the Plan, who are attorneys representing Asbestos Claimants. The CAC will be responsible for representing the shared interests of current Asbestos Claimants. The FCR

will represent the shared interests of future Asbestos Claimants. *See* Asbestos Trust Agreement §§ 5.2, 6.1; Inselbuch Dec. ¶¶ 37-38; Grier Dec. ¶¶ 45-47.

79.     In addition, the Asbestos Trust and the Reorganized Debtors will enter into a Cooperation Agreement regarding the Asbestos Trust's taking possession of certain documents and the Reorganized Debtor's obligations to assist the Asbestos Trust in the processing, resolution, and defense of Asbestos Claims. The form of Cooperation Agreement is attached as Exhibit C to the Plan. However, prior to execution, the Trustee will have the opportunity to review and propose changes to the Cooperation Agreement.

80.     Anchor, a North Carolina corporation, has no assets or insurance and has not paid to defend or settle an asbestos claim since 2005. The Plan provides that, on the Effective Date, Anchor will be dissolved in accordance with North Carolina General Statutes §§ 55-14-01 *et seq.* (Plan § 7.7). All Holders of Class 8 Anchor Claims will be permitted, after the Effective Date, to assert and pursue claims against Anchor, and such claims will be fully reinstated to the status quo ante as of the Petition Date. (*Id.*). Claims against Anchor shall not be assumed or paid by the Asbestos Trust. However, all derivative claims against GST, Garrison, and Coltec based on third parties' asbestos liabilities, including such claims based on Anchor's liabilities, will be subject to the Asbestos Channeling Injunction, and GST, Garrison, and Coltec will be discharged of those claims to the fullest extent permitted by law.

81.     Immediately upon the effectiveness of the Asbestos Channeling Injunction on the Effective Date, the Plan provides that Coltec shall merge with and into EnPro Holdings, Inc., with EnPro Holdings, Inc. as the survivor of such merger, pursuant to the Articles of Merger attached as Exhibit K to the Plan. In such merger, the outstanding Capital Stock of Coltec will be cancelled and each outstanding share of Capital Stock of Coltec will be converted into a share of

common stock of EnPro Holdings, Inc. EnPro Holdings, Inc. will succeed to Coltec's obligations under the Plan. (Plan § 7.10).

**F.**     ***Subsequent Events in the Chapter 11 Cases***

82.     In November 2016, GST, Garrison, EnPro, Coltec and Garlock of Canada Ltd. entered into the Canadian Settlement and the Garlock Debtors promptly moved the Bankruptcy Court for an order approving the Canadian Settlement pursuant to Bankruptcy Rule 9019, as contemplated in Section 7.8(jj) of the Plan. The Bankruptcy Court entered an Order Granting Debtors' Motion to Approve Compromise and Settlement of Present and Future Canadian Provincial Board Claims for Asbestos-Related Injury Payments on February 3, 2017 (Docket No. 5676). The Canadian Settlement resolves certain Resolved Claims (as defined in the settlement agreement) that the Canadian Provincial Workers' Compensation Boards contend have been assigned to them based in part on Canadian workers' contact with the products of the Garlock Parties (as defined in the settlement). In exchange for payment of the Settlement Amount by the Garlock Parties, the Provincial Boards agreed that no Resolved Claim may be filed against any Garlock Party, any Asbestos Protected Party, or the Asbestos Trust.

83.     On December 19, 2016, the Balloting Agent filed the Ballot Certification certifying that Classes 5 and 9 had accepted the Plan.

84.     On December 31, 2016, the Coltec Restructuring contemplated by the Plan was completed. Coltec filed its Chapter 11 petition on January 30, 2017 (Case No. 17-BK-30140, Docket No. 1). The Chapter 11 Cases are jointly administered (Docket No. 5677). Hence, as required by the Plan, the Coltec Restructuring has been consummated and OldCo, LLC has commenced its Chapter 11 case (Plan § 7.8(a)).

85.     On February 3, 2017, the Bankruptcy Court entered an order appointing the Ad Hoc Coltec Future Asbestos Claimants' Representative, Joseph W. Grier, III, as the legal representative to represent the interests of, appear on behalf of, and be a fiduciary to the holders of future Coltec Asbestos Claims (Case No. 17-BK-30140, Docket No. 43; *see also* Plan § 7.8(b)).

86.     That same day, the Bankruptcy Court entered an order appointing to the Committee three Coltec Asbestos Claimants from among the clients of the plaintiff law firms serving on the Ad Hoc Coltec Asbestos Claimants Committee, and further providing that the expanded Committee serve as the Official Committee of Asbestos Personal Injury Claimants in the Coltec Bankruptcy Case (Docket No. 5674; *see also* Plan § 7.8(c)).

**V.     The Plan Satisfies the Requirements for Confirmation**

A.     ***Burden of Proof***

87.     The Plan Proponents have the burden of proving the elements of Section 1129(a) by a preponderance of the evidence. In support of confirmation, the Plan Proponents submitted the Declarations as well as certain other exhibits (Docket No. 5959). This Court finds the written testimony in the Declarations and other exhibits offered to be credible and supportive of confirmation of the Plan. As detailed below, the Plan satisfies all applicable sections of the Bankruptcy Code, including Section 524(g) of the Bankruptcy Code (Plan § 7.8(d)).

B.     ***Impaired Class That Has Voted to Accept the Plan***

88.     As set forth in the Plan, Class 5 Asbestos Claims are impaired by the Plan and therefore were entitled to vote. As set forth in the Ballot Certification, claimants in Class 5 voted to accept the Plan in the requisite numbers and amounts required by Sections 524(g), 1126, and 1129 of the Bankruptcy Code (Plan § 7.8(g)).

C.    *Adequacy of Notice and Due Process*

89.    Adequate and sufficient notice of the Plan and the Confirmation Hearing, as well as all deadlines for objecting to the Plan, has been given to all known non-asbestos creditors and holders of Interests.

90.    The program for providing notice of the Plan, Confirmation Hearing, and appointment of the FCR as legal representative for future Asbestos Claimants is reasonably calculated under the circumstances to apprise Asbestos Claimants of the Plan, Confirmation Hearing, and the appointment of the FCR as the legal representative for future Asbestos Claimants, and to afford Asbestos Claimants an opportunity to present their objections, and such program therefore provides constitutionally effective notice to the fullest extent achievable by law (Plan § 7.8(e)). Solicitation Procedures Order, ¶ 19; Wheatman Amended Affidavit *passim* (Docket No. 5374); Wheatman Affidavit *passim* (Docket No. 5919); Barry Dec. ¶¶ 5-17; Riggins Dec. ¶¶ 4-10; Gallardo-Garcia Dec. ¶¶ 4-10; Nownes-Whitaker Dec. ¶¶ 3-11.

91.    The program for providing notice of the Plan, Confirmation Hearing, and appointment of the FCR as the legal representative for future Asbestos Claimants was in fact implemented, and was reasonably calculated under the circumstances to apprise Asbestos Claimants of the Plan, Confirmation Hearing, and the appointment of the FCR as the legal representative for future Asbestos Claimants, and to afford Asbestos Claimants an opportunity to present their objections, and such program therefore provided constitutionally effective notice to the fullest extent achievable by law (Plan § 7.8(f)). *See* Wheatman Amended Affidavit *passim* (Docket No. 5374); Wheatman Affidavit *passim* (Docket No. 5919); Barry Dec. ¶¶ 5-17; Riggins Dec. ¶¶ 4-10; Gallardo-Garcia Dec. ¶¶ 4-10; Nownes-Whitaker Dec. ¶¶ 3-11.

92. All Asbestos Claimants have been afforded due process based on the notice program described above, the appointment of the FCR as the legal representative for future Asbestos Claimants, and the Plan's compliance with Section 524(g) of the Bankruptcy Code (Plan § 7.8(ll)). *See* Wheatman Amended Affidavit *passim* (Docket No. 5374); Wheatman Affidavit *passim* (Docket No. 5919); Barry Dec. ¶¶ 5-17; Riggins Dec. ¶¶ 4-10; Gallardo-Garcia Dec. ¶¶ 4-10; Nownes-Whitaker Dec. ¶¶ 3-11.

D. ***The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code***

93. **Section 1129(a)(1)**. The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(1). Among other provisions, as shown below, the Plan meets the requirements of Bankruptcy Rule 3016 and Sections 1122 and 1123 of the Bankruptcy Code.

94. **Bankruptcy Rule 3016(a).** As required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Plan Proponents.

95. **Bankruptcy Rule 3016(b).** The filing of the Disclosure Statement with the Bankruptcy Court satisfied Bankruptcy Rule 3016(b) in all the Chapter 11 Cases. The Disclosure Statement was filed in the Coltec Bankruptcy Case following its solicitation of acceptances prepetition. The Court finds and concludes that the Disclosure Statement contains, with respect to the Coltec Bankruptcy Case, adequate information within the meaning of Section 1125 of the Bankruptcy Code. The Court finds further that the Plan was transmitted before Coltec's petition to substantially all Coltec Asbestos Claimants in Class 5, that a reasonable time was given to such claimants to accept or reject the Plan, and that the solicitation complied with section 1126(b) of the Bankruptcy Code.

96. **Bankruptcy Rule 3016(c)**. The Plan and Disclosure Statement further satisfy Bankruptcy Rule 3016(c) by identifying, in specific and conspicuous language, both the acts to be enjoined by the Asbestos Channeling Injunction (and the other injunctions contained in the Plan) and the entities that are subject to the Asbestos Channeling Injunction and the other injunctions contained in the Plan.

97. **Sections 1122 and 1123**. Compliance with Sections 1122 and 1123 of the Bankruptcy Code is also necessary for the Court to conclude that the Plan complies with Section 1129(a)(l) of the Bankruptcy Code. Here, for the reasons set forth below, the Plan complies with Sections 1122 and 1123.

98. **Section 1122(a)**. The Bankruptcy Code imposes a limitation on the classification of claims and interests, requiring that only substantially similar claims may be included in the same class. The Plan complies with Section 1122(a) because each class of claims and interests as set forth in Article 3 of the Plan consists solely of substantially similar Claims or Equity Interests.

99. **Section 1122(b)**. The Plan does not create a separate convenience class of claims, so Section 1122(b) does not apply.

100. **Section 1123(a)(1)**. The Plan satisfies Section 1123(a)(1) because it adequately and properly identifies and classifies all claims and interests in Article 3 of the Plan.

101. **Section 1123(a)(2)**. Section 1123(a)(2) of the Bankruptcy Code requires that the Plan must specify any class of claims or interests that is not impaired under the plan. Article 3 of the Plan identifies Classes 1, 2, 3, 4, 6, 7, 8, and 10 as being unimpaired. Accordingly, the Plan satisfies Section 1123(a)(2).

102.    **Section 1123(a)(3).** The Plan complies with Section 1123(a)(3) of the Bankruptcy Code, which requires that the Plan identify the treatment of each impaired class of claims and interests. Article 3 of the Plan identifies Classes 5 (Asbestos Claims) and 9 (GST/Garrison Equity Interests) as impaired, and sets forth the treatment of each such impaired class of claims or interests. Plan §§ 3.1.5 (Class 5) and 3.1.9 (Class 9).

103.    **Section 1123(a)(4).** The Plan provides for the same treatment for all claims or interests in each class, unless the holder of such claim or interest agrees to less favorable treatment, thereby satisfying Section 1123(a)(4) of the Bankruptcy Code.

104.    **Section 1123(a)(5).** Section 1123(a)(5) of the Bankruptcy Code requires that the Plan include adequate means for its implementation. The Plan complies with § 1123(a)(5) by, among other things, providing for: (a) vesting of assets in the Reorganized Debtors necessary to implement the Plan (Plan § 7.1); (b) appropriate amendment of the Debtors' organizational documents and maintenance of insurance coverage (Plan § 7.2); (c) creation of the Asbestos Trust (Plan § 7.3.1); (d) funding of and vesting of assets in the Asbestos Trust (Plan §§ 7.3.2, 7.3.2); (e) transfer of all Asbestos Claims to the Asbestos Trust (Plan §§ 7.3.3, 8.2); and (f) creation of the Asbestos Trust and mechanisms for its operation and governance (Plan §§ 7.3.5, 7.3.6, 7.3.7, 7.3.8, 7.3.9, Ex. B).

105.    **Section 1123(a)(6).** Section 1123(a)(6) of the Bankruptcy Code requires a plan to provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of any corporation to which the debtor transfers all or any part of the debtor's estate or with which the debtor has merged or consolidated, a provision prohibiting the issuance of non-voting equity securities. The Plan complies with Section 1123(a)(6) in that it prohibits issuance of nonvoting equity securities of the Reorganized Debtors that are corporations (Plan § 7.2.1).

106. **Section 1123(a)(7).** Sections 7.3.5, 7.3.6, and 7.3.8 of the Plan and Sections IV, V, and VI of the Asbestos Trust Agreement contain provisions with respect to the manner of selection of the initial Asbestos Trustee, subsequent Asbestos Trustees, the CAC, and the FCR. Section 1.1.25 of the Plan identifies the initial Asbestos Trustee as Lewis R. Sifford. The initial members of the CAC are identified on the signature pages of the Asbestos Trust Agreement. In addition, Exhibit 4 to the Disclosure Statement identifies those persons who will serve as directors and key management personnel for the Reorganized Debtors. The Plan is consistent with public policy with respect to the manner of selection of directors, officers, and managers of the Debtors. Thus, the requirements of Section 1123(a)(7) of the Bankruptcy Code are satisfied.

107. **Section 1123(b)(2).** Section 9.1 of the Plan, which provides for assumption or rejection of executory contracts, complies with the requirements of Section 365 of the Bankruptcy Code and thus satisfies Section 1123(b)(2).

108. **Section 1123(b)(3)(A).** Section 1123(b)(3)(A) allows a plan to provide for settlement of any claim or interest belonging to the Debtors or their estate. The Plan provides for the settlements and releases described in Sections 8.4.1, 8.4.2, 8.4.3, and 8.4.4. The Court finds that each of these settlements and releases represents a good faith compromise; is in the best interest of the Debtors, the Debtors' estates, and the holders of Claims and Interests; is within the reasonable range of possible litigation outcomes; is fair and equitable; and is an essential element of the resolution of the Chapter 11 Cases in accordance with the Plan. Magee Dec. ¶¶ 79, 82, 96. Accordingly, the settlements and releases described in Sections 8.4.1, 8.4.2, 8.4.3, and 8.4.4 of the Plan are approved pursuant to Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code.

109.   **Section 1123(b)(3)(B).** The Plan permissibly provides for Retained Causes of Action, as authorized under Section 1123(b)(3)(B), and as set forth on Exhibit F to the Plan.

110.   **Section 1129(a)(2).** Section 1129(a)(2) of the Bankruptcy Code requires that the Plan Proponents comply with all applicable provisions of the Bankruptcy Code, including Section 1125. The Plan Proponents have satisfied this requirement. The Disclosure Statement distributed to creditors contained adequate information about the Plan. The mailing and publication of notice of the Disclosure Statement and Plan provided adequate notice of the Disclosure Statement and Plan to all creditors entitled to vote as required by Bankruptcy Rules 2002 and 3017. The Voting Procedures utilized by the Plan Proponents and approved by the Bankruptcy Court in the Solicitation Procedures Order satisfy all requirements of the Bankruptcy Code and Bankruptcy Rules, including, without limitation, Sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 2002, 3017, and 3018. The solicitation of votes was conducted in accordance with procedures approved by the Bankruptcy Court.

111.   **Section 1129(a)(3).** The Plan has been proposed in good faith and not by any means forbidden by law. The Plan is the result of extensive negotiations among the Plan Proponents and EnPro, which used their best efforts to negotiate an agreement that will provide a fair and equitable mechanism for the orderly resolution of all present and future Asbestos Claims. Under the facts and circumstances of this Case, the Plan has been designed to achieve a fair and equitable treatment of all creditor Claims and Demands and is consistent with the purposes of the Bankruptcy Code. Magee Dec. ¶¶ 55-96; Inselbuch Dec. ¶¶ 20-56; Grier Dec. ¶¶ 26-32.

112.   The Plan constitutes a global compromise and settlement among the Plan Proponents and EnPro. In accordance with Bankruptcy Rule 9019, the Court finds and concludes

that the Plan, and each compromise and release of Claims more particularly described therein, represents a good faith compromise; is in the best interest of the Debtors, the Debtors' estates, and the holders of Claims and Interests; is within the reasonable range of possible litigation outcomes; is fair and equitable; and is an essential element of the resolution of the Chapter 11 Cases in accordance with the Plan. Magee Dec. ¶¶ 79, 96.

113. **Section 1129(a)(4).** Section 1129(a)(4) of the Bankruptcy Code provides that payments to be made to professionals for costs and expenses must be approved by the Bankruptcy Court. The Plan complies with this requirement in Section 5.3, which sets a bar date for Administrative Expense Claims and Fee Claims. The Plan further provides for payment of Allowed Administrative Expense Claims in accordance with the terms and conditions in the agreements underlying the transactions giving rise to such Administrative Expense Claims. Plan § 2.1.1. All payments made or to be made by Debtors, for services or for costs and expenses in connection with the Chapter 11 Case or in connection with the Plan, thus have been approved by or are subject to approval by the Bankruptcy Court.

114. **Section 1129(a)(5).** The Plan complies with Section 1129(a)(5) because the Debtors have disclosed in the Plan Supplement the identity and affiliations of any individual who will act as a director, officer, or voting trustee of the Debtors or the successors of the Debtors after confirmation of the Plan, as well as any insiders to be employed or retained by the debtor and the nature of their compensation. The identity of the individuals proposed to serve, after confirmation of the Plan, as directors, officers, or managers of the Reorganized Debtors are disclosed in Exhibit 4 to the Disclosure Statement, and the appointment to, or continuance in, such offices of such individuals, is consistent with the interests of creditors, equity security holders, and public policy. The Debtors have disclosed the identity of all insiders who will be

employed or retained by the Reorganized Debtors, and the nature of the compensation of such insiders. Disclosure Statement § 7.5.1, Ex. 4; Plan Supplement, Ex. N. In addition, the name of the initial Asbestos Trustee, Lewis R. Sifford, is disclosed in Section 1.1.25 of the Plan. The FCR is identified in Section 1.1.83 of the Plan, and the members of the CAC are listed on the signature pages of the Asbestos Trust Agreement.

115. **Section 1129(a)(6).** Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

116. **Section 1129(a)(7).** Section 1129(a)(7) of the Bankruptcy Code provides that each creditor or interest holder in an impaired class must either accept the plan or receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date. 11 U.S.C. § 1129(a)(7)(ii). Each impaired class voted in favor of the Plan by the required number, amount, and percentage of claims voted. Those holders of claims that have not voted in favor of the Plan would receive less in a liquidation under Chapter 7 than they would receive under the Plan. Based upon the findings of fact contained herein, the Declarations submitted in support of confirmation, and the separate and alternative liquidation analyses provided by the Debtors and the Committee, this Court finds and concludes that the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code. Dragelin Dec. ¶¶ 5-8, Ex. A; Bates Dec. ¶¶ 12 *et seq.*; Rapp Dec. ¶¶ 5 *et seq.* (as corrected, Docket No. 5927-1); Peterson Dec. ¶¶ 4 *et seq.* (as corrected, Docket No 5926-1).

117. **Section 1129(a)(8).** The Plan satisfies Section 1129(a)(8) because each class of impaired claims or interests has voted to accept the plan.

118.    **Section 1129(a)(9).** The treatment of Administrative Expense Claims and Priority Tax Claims under the Plan satisfies the requirements of Sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code. The Plan is sufficiently funded to pay all administrative and priority claims, and all priority claims will be treated as required under Section 1129(a)(9) of the Bankruptcy Code. Section 2.1.1 of the Plan provides for payment of Allowed Administrative Expense Claims as soon as practicable after the Effective Date or as ordered by the Bankruptcy Court, unless otherwise agreed between the Debtors and Holder of any such claim. Consistent with Section 1129(a)(9)(C) of the Bankruptcy Code, the Plan provides at Section 2.1.2 for payment of Priority Tax Claims in cash on the Distribution Date.

119.    **Section 1129(a)(10).** The Plan satisfies Section 1129(a)(10) because at least one impaired class of claims (Class 5) has voted to accept the Plan.

120.    **Section 1129(a)(11).** The Plan is feasible. Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors or any successors. The Debtors will be in a position to consummate the Plan and to meet all of their obligations under the Plan. Childress Dec. ¶¶ 16-29; Magee Dec. ¶ 85.

121.    **Section 1129(a)(12).** Section 1129(a)(12) is satisfied because the fees payable under Section 1930 of title 28 of the United States Code, as determined by the Court at the Plan Confirmation Hearing, either have been paid or are to be paid under the Plan on the Distribution Date.

122.   **Section 1129(d).** The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, and there has been no request filed by any governmental unit asserting such avoidance.

123.   Adequate and sufficient notice of the Plan and the Confirmation Hearing, as well as all deadlines for objecting to the Plan, has been given to all parties in interest, including all known creditors and holders of Interests, all known GST Asbestos Claimants and Coltec Asbestos Claimants, and appropriate publication notice has been given with respect to unknown claimants. All Asbestos Claimants have been afforded due process based on the notice program described above, the appointment of the FCR as the legal representative for future Asbestos Claimants, and the Plan's compliance with Section 524(g) of the Bankruptcy Code, such that any holder of a GST Asbestos Claim or Coltec Asbestos Claim, among other parties, will be bound by the terms of the Plan Documents, this Confirmation Order, and the Asbestos Channeling Injunction. No further notice shall be required.

124.   As set forth in ¶¶ 93-123 above, the Plan complies in all respects with the applicable requirements of Section 1129 of the Bankruptcy Code.

**E.**   *The Plan Satisfies the Requirements of Section 524(g) of the Bankruptcy Code*

125.   For the reasons set forth below, the Plan complies with the requirements of Section 524(g) of the Bankruptcy Code for the issuance of the Asbestos Channeling Injunction and the establishment of the Asbestos Trust.

126.   The Asbestos Channeling Injunction is being implemented in connection with the Asbestos Trust pursuant to the Plan. 11 U.S.C. § 524(g)(2)(B)(i); Plan § 8.2.

127.   As of the Petition Date, each of GST, Garrison, and Coltec have been named as defendants in personal injury and wrongful death actions seeking recovery for damages allegedly

caused by the presence of, or exposure to, asbestos or asbestos-containing products. 11 U.S.C. § 524(g)(2)(B)(i)(I); Plan § 7.8(h); Magee Dec. ¶¶ 26-54.

128.    On the Effective Date, the Asbestos Trust shall assume responsibility for all Asbestos Claims, except Foreign Asbestos Claims that are not filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States; and upon such assumption, no Asbestos Protected Party shall have any liability or responsibility, financial or otherwise, for such Asbestos Claims, except for the obligations to timely transfer or deliver the Asbestos Trust Assets to the Asbestos Trust as provided in the Plan. 11 U.S.C. § 524(g)(2)(B)(i)(I); Plan §§ 7.3.4 and 7.8(k).

129.    The Asbestos Trust is to be funded in part by securities of one or more Reorganized Debtors and by the obligations of the Reorganized Debtors to make future payments. 11 U.S.C. § 524(g)(2)(B)(i)(II); Plan §§ 7.3.2 and 7.8(l); Plan Ex. H, I, and J; Magee Dec. ¶ 89; Inselbuch Dec. ¶ 60; Grier Dec. ¶ 68.

130.    The Asbestos Trust is to own, or by the exercise of rights granted under the Plan will be entitled to own if specified contingencies occur, a majority of the voting shares of each Reorganized Debtor or a subsidiary of each Reorganized Debtor that is also a Debtor. 11 U.S.C. § 524(g)(2)(B)(i)(III)(aa); Plan §§ 7.3.2 and 7.8(m); Inselbuch Dec. ¶ 61; Grier Dec. ¶ 69.

131.    The Asbestos Trust is to use the Asbestos Trust Assets to pay Asbestos Claims (including Demands) and Asbestos Trust Expenses. 11 U.S.C. § 524(g)(2)(B)(i)(IV); Plan § 7.8(n); Inselbuch Dec. ¶ 62; Grier Dec. ¶ 70.

132.    GST, Garrison, and Coltec are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Claims, which Demands are addressed by the Asbestos Channeling Injunction. 11 U.S.C.

§ 524(g)(2)(B)(ii)(I); Plan § 7.8(o). The actual amounts, numbers, and timing of such future Demands cannot be determined. 11 U.S.C. § 524(g)(2)(B)(ii)(II); Plan § 7.8(p); Magee Dec. ¶ 54; Inselbuch Dec. ¶¶ 63-64; Grier Dec. ¶¶ 71-72. Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Asbestos Claims. 11 U.S.C. § 524(g)(2)(B)(ii)(III); Plan § 7.8(q); Inselbuch Dec. ¶ 65; Grier Dec. ¶ 73.

133. The terms of the Asbestos Channeling Injunction, and any provisions barring actions against third parties, are set out in the Plan and the Disclosure Statement, and each of the Plan and the Disclosure Statement adequately describes such injunctions and provisions (and the acts and entities to which they apply) in specific and conspicuous language in accordance with the requirements of Bankruptcy Rule 3016(c). 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(aa); Plan §§ 7.8(r) and 8.2; Disclosure Statement § 5.4.2; Inselbuch Dec. ¶ 66; Grier Dec. ¶ 74.

134. The Plan establishes, in Class 5, a separate class of the Claimants whose Claims are to be addressed by the Asbestos Trust. Plan §§ 3.1.5, 7.8(s), and 8.2. Class 5 has voted, by at least 75% of those voting, in favor of the Plan. 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb); Plan § 7.8(t); *see* Ballot Certification.

135. Pursuant to Court orders or otherwise, the Asbestos Trust shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Claims (including Demands), or other comparable mechanisms that provide reasonable assurance that the Asbestos Trust shall value, and be in a financial position to pay, Asbestos Claims (including Demands that involve similar claims) in substantially the same manner. 11 U.S.C. § 524(g)(2)(B)(ii)(V); Plan § 7.8(u); Inselbuch Dec. ¶ 68; Grier Dec. ¶ 76.

136. Each Asbestos Protected Party is identifiable from the terms of the Asbestos Channeling Injunction by name or as part of an identifiable group, and each Asbestos Protected Party falls within the categories of non-debtors protectable under Section 524(g) of the Bankruptcy Code. 11 U.S.C. §§ 524(g)(2)(B)(ii)(IV)(aa) and 524(g)(4)(A)(ii); Plan §§ 1.1(21), 7.8(v), and 8.2.1; Plan Ex. D and E.

137. The FCR has been appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos Channeling Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert future Claims and Demands of the kind that are addressed in the Asbestos Channeling Injunction and transferred to the Asbestos Trust. 11 U.S.C. § 524(g)(4)(B)(i); Plan § 7.8(w); Inselbuch Dec. ¶ 70; Grier Dec. ¶ 78.

138. In light of the benefits provided, or to be provided, to the Asbestos Trust by, or on behalf of, each Asbestos Protected Party, (i) the Asbestos Channeling Injunction is fair and equitable (including with respect to the Entities that might subsequently assert Demands against any Asbestos Protected Party) and is supported by reasonable consideration, and (ii) the releases in favor of the Asbestos Protected Parties described in the Plan are fair and equitable and are supported by reasonable consideration. 11 U.S.C. § 524(g)(4)(B)(ii); Plan § 7.8(y); Magee Dec. ¶ 92; Inselbuch Dec. ¶ 71; Grier Dec. ¶ 79.

139. As set forth in ¶¶ 125-138 above, the Plan complies in all respects with the applicable requirements of Section 524(g) of the Bankruptcy Code. Accordingly, the Asbestos Channeling Injunction is authorized by Section 524(g) of the Bankruptcy Code. 11 U.S.C. § 524(g)(3)(A).

F.    ***Further Findings and Conclusions in Support of Plan Confirmation and Section 524(g) Relief***

140.    The Court has jurisdiction over each of the Claims and Demands that is subject to the Asbestos Channeling Injunction described in Section 8.2 of the Plan and the releases described in the Plan. Plan § 7.8(x).

141.    The Asbestos Channeling Injunction and the releases in favor of the Asbestos Protected Parties described in the Plan are to be implemented and granted in connection with the Plan and the Plan Documents and the Asbestos Trust. Plan § 7.8(z).

142.    The Asbestos Channeling Injunction and the releases in favor of the Asbestos Protected Parties described in the Plan (i) are essential to the Debtors' reorganization efforts and the feasibility of the Plan, (ii) enable necessary funding to the Plan that otherwise would be unavailable absent the injunctions and releases, (iii) are necessary to induce the Asbestos Protected Parties to enter into the settlements and agreements described in the Plan and to otherwise settle their disputes, (iv) are necessary to resolve finally all claims of the Debtors, the Non-Debtor Affiliates, and the Debtors' creditors against the other Asbestos Protected Parties; and (v) have been overwhelmingly approved by Holders of Asbestos Claims. Plan § 7.8(aa); Magee Dec. ¶¶ 56, 60-61, 79-81; Ballot Certification.

143.    An identity of interests exists among the Debtors and the Asbestos Protected Parties such that an Asbestos Claim asserted against any of the Asbestos Protected Parties gives rise to a Claim against the Debtors, including by the operation of the law of indemnity (contractual or otherwise) and/or contribution. Plan § 7.8(bb); Magee Dec. ¶ 92.

144.    The settlements, compromises, releases, and injunctions in favor of the Asbestos Protected Parties described in the Plan are approved in all respects. Plan § 7.8(cc).

145.    In approving the settlements, compromises, releases, and injunctions with respect to the Asbestos Protected Parties, the Court has considered, among other things: (i) the nature of the claims asserted or potentially asserted by the Debtors, the Non-Debtor Affiliates, and/or the Debtors' creditors against the Asbestos Protected Parties, and the claims asserted or potentially assertable by the Asbestos Protected Parties against the Debtors and the Non-Debtor Affiliates, (ii) the balance of the likelihood of success of claims which might be asserted by the Debtors or other claimants against the Asbestos Protected Parties against the likelihood of success of the defenses or counterclaims possessed by the Asbestos Protected Parties, (iii) the complexity, cost, and delay of litigation that would result in the absence of these settlements, compromises, releases, and injunctions, (iv) the lack of objections by, or the overruling of objections of any creditor or party-in-interest to the settlements, compromises, releases and injunctions, (v) that the Asbestos Claims will be channeled to the Asbestos Trust rather than extinguished, (vi) that the Estate Parties and the Asbestos Trust will receive substantial consideration from the Asbestos Protected Parties described in the Plan, (vii) that the Asbestos Protected Parties that will benefit from the releases and injunctions share an identity of interest with the Debtors, (viii) that the enjoined claims against the Asbestos Protected Parties would otherwise indirectly impact the Debtors' reorganization by way of indemnity or contribution, and (ix) the Plan and the settlements, compromises, releases, and injunctions described in the Plan are the product of extensive arms' length negotiations among the Debtors, the Asbestos Claimants Committee, the FCR, and the Asbestos Protected Parties, among others. Plan § 7.8(dd). Magee Dec. ¶¶ 79, 96.

146.    As of the Effective Date, the Reorganized Debtors will have the ability to pay and satisfy in the ordinary course of business their respective obligations and liabilities. Plan § 7.8(ee); Magee Dec. ¶ 85; Childress Dec. ¶¶ 11, 16-29.

147.    All Asbestos Claims (except Foreign Asbestos Claims that are not filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States) shall be channeled to and resolved by the Asbestos Trust in accordance with the terms set forth in the Plan, the Asbestos Trust Agreement, and the CRP. Plan § 7.8(ff).

148.    The FCR and Ad Hoc Coltec Future Asbestos Claimants' Representative have adequately protected the rights of Holders of future GST Asbestos Claims and future Coltec Asbestos Claims. Plan § 7.8(gg); Grier Dec. *passim*; Inselbuch Dec. *passim*.

149.    The FCR, the Ad Hoc Coltec Future Asbestos Claimants' Representative, the Asbestos Claimants Committee and its members, and the Ad Hoc Coltec Asbestos Claimants Committee and its members (before and after merger with the Asbestos Claimants Committee) have each fulfilled their responsibilities and fiduciary duties to their respective constituencies pursuant to the applicable appointment orders. Plan § 7.8(hh); Grier Dec. *passim*; Inselbuch Dec. *passim*.

150.    EnPro and Debtors have obtained such amendments, consents and waivers as may be necessary under any agreements binding on them or any subsidiary to permit the transactions and actions contemplated by the March 17, 2016 Term Sheet for Permanent Resolution of All Present and Future GST Asbestos Claims and Coltec Asbestos Claims, and its attachments. Plan § 7.8(ii).

151.    The Canadian Settlement has been agreed to; Debtors have moved for entry of an order that approves such agreement and have given parties in interest, including the FCR, notice and an opportunity to object to such motion; and the Bankruptcy Court has entered an order approving the Canadian Settlement and such order has become a Final Order (Docket No. 5676). Plan § 7.8(jj).

152.    EnPro has obtained a private letter ruling from the IRS recognizing the Asbestos Trust as a "designated settlement fund" or "qualified settlement fund" under Section 468B of the Internal Revenue Code, and any related regulations. Plan § 7.8(kk).

153.    The Coltec Restructuring was an appropriate and necessary step to facilitate the formulation, confirmation, and implementation of the Plan and the payment of Coltec Asbestos Claims and was not undertaken in order to hinder, delay, or defeat any of Debtors' creditors or the resolution of any Claims against the Debtors. Plan § 7.8(mm).

154.    On and after the Effective Date, each Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code or by the Court and, except as otherwise expressly provided in the Plan, will be vested with all of the assets and property of its respective Estate, free and clear of all claims, liens, encumbrances, charges, and other interests of Holders of Claims or Interests. Plan § 7.8(nn).

## VI.    Modifications to the Plan

155.    The Modifications (1) do not adversely change, in any material respect, the treatment under the Plan of any Claims or Interests and (2) comply in all respects with Bankruptcy Rule 3019.

156.    Pursuant to Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, the Modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code or the resolicitation of acceptances or rejections of the Plan under Section 1126 of the Bankruptcy Code, nor do they require that holders of Claims against or Interests in the Debtors be afforded an opportunity to change previously cast acceptances or rejections of the Plan as Filed with the Bankruptcy Court.

157. Disclosure of the Modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these cases.

158. Accordingly, the Plan (as modified) is properly before the Court and all votes cast with respect to the Plan prior to the Modifications shall be binding and shall be deemed to be cast with respect to the Plan as modified.

**ORDER CONFIRMING PLAN AND GRANTING RELIEF UNDER SECTION 524(g)**

NOW, THEREFORE, BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, WHICH ARE INCORPORATED HEREIN AND ADOPTED, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

## I. General Provisions

### A. *Approval of Disclosure Statement and Confirmation of the Plan*

159. The Disclosure Statement is hereby APPROVED in, and with respect to, the Coltec Bankruptcy Case, in accordance with Section 1125 of the Bankruptcy Code.

160. All objections to the Plan that have not been withdrawn or waived, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits.

161. The Plan and each of its provisions (whether or not specifically approved herein) and all exhibits and schedules thereto, as amended or modified to the date hereof, are hereby CONFIRMED in each and every respect, pursuant to Section 1129 of the Bankruptcy Code.

### B. *Conditions to the Effective Date of the Plan*

162. Nothing in this Confirmation Order or in the Findings of Fact and Conclusions of Law herein shall in any way affect the provisions of Section 7.9 of the Plan, which include provisions regarding (1) the conditions precedent to the Effective Date of the Plan and (2) the waiver of any such conditions. If a condition to the occurrence of the Effective Date set forth in Section 7.9 of the Plan cannot be satisfied, and the occurrence of such condition is not waived in writing by the parties set forth in Section 7.9 of the Plan, then the Plan and this Confirmation Order shall be deemed null and void. In such event, nothing contained herein or in any of the Plan Documents shall be deemed to constitute a waiver or release of any claims or defenses of,

or an admission or statement against interest by, any of the Plan Proponents or any other Entity

or to prejudice in any manner the rights of any of the Plan Proponents or any Entity in any

further proceedings involving the Debtors. Upon the satisfaction or waiver of the conditions

contained in Section 7.9 of the Plan and the occurrence of the Effective Date, substantial

consummation of the Plan, within the meaning of Section 1127 of the Bankruptcy Code, shall

be deemed to occur without further notice or order.

### C.    *Effects of Confirmation*

163.    Upon the occurrence of the Effective Date as provided in section 7.9 of the Plan,

and in accordance with Section 1141(a) of the Bankruptcy Code, the terms of the Plan and this

Confirmation Order shall be binding upon all Entities, including the Debtors, the Reorganized

Debtors, any and all holders of Claims, Demands, or Interests (irrespective of whether such

Claims or Interests are impaired under the Plan or whether the holders of such Claims or

Interests accepted, rejected, or are deemed to have accepted or rejected the Plan), any and all

non-Debtor parties to executory contracts and unexpired leases with any of the Debtors and any

and all Entities who are parties to or are subject to the settlements, compromises, releases,

waivers, discharges, and injunctions described herein and in the Findings of Fact and

Conclusions of Law or in the Plan, and the respective heirs, executors, administrators, trustees,

affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians,

successors or assigns, if any, of any of the foregoing.

164.    On the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code,

except as otherwise expressly provided in the Plan, in the Plan Documents, or in this

Confirmation Order, the assets and property of the Debtors shall vest or re-vest in the

appropriate Reorganized Debtors for use, sale and distribution in accordance with operation of

the Reorganized Debtors' business and the Plan. From and after the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, sell and otherwise dispose of property without supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the Bankruptcy Administrator, other than those restrictions expressly imposed by the Plan, the Plan Documents, or this Confirmation Order.

**D.**     *Approval, Modification, and Execution of Plan Documents*

165.    The Plan, all exhibits and schedules thereto, substantially in the form as they exist at the time of the entry of this Confirmation Order, and each of the other Plan Documents, are ratified and approved in all respects. Each of the officers of the Debtors and the Reorganized Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of the Plan, the transactions contemplated by the Plan, and any securities issued pursuant to the Plan, notwithstanding that the efficacy of such documents may be subject to the occurrence of the Effective Date as contemplated by and under the Plan and/or Plan Documents.

166.    The Plan Proponents, acting unanimously, are hereby authorized to alter, amend, or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with Section 1127 of the Bankruptcy Code and Section 4.1.1 of the Plan.

167.    The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect, and

enforceability as every other provision of the Plan. If there is any conflict between the terms of the Plan or any exhibit thereto and the terms of this Confirmation Order, the terms of the Plan or any such exhibit, as the case may be, shall control.

## II.     Claims Bar Dates and Other Claims Matters

### A.     *General Bar Date Provisions for Administrative Expense Claims*

168.     All requests for payment of an Administrative Expense Claim that is not a Fee Claim shall be filed with the Bankruptcy Court and served on the Debtors at the addresses set forth in Section 11.9 of the Plan so as to be received on or before 4:00 p.m. (Eastern Time) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date, unless otherwise agreed to by the appropriate Debtor or Reorganized Debtor, without further approval by this Court.

169.     Any Holder of an Administrative Expense Claim that does not assert such Claim before such deadline shall have its Claim deemed Disallowed under the Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Claim.

170.     All objections to Administrative Expense Claims shall be filed and served on the requesting party within sixty (60) days after the Effective Date (unless the objection deadline is extended by the Bankruptcy Court upon request of the Reorganized Debtors). In the event that the Reorganized Debtors object to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim.

171.     Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to an Administrative Expense Claim seeking

payment of postpetition ordinary course trade obligations, postpetition payroll obligations incurred in the ordinary course of a Debtor's postpetition business, and amounts arising under agreements approved by the Bankruptcy Court or the Plan and *provided further*, that no request for payment of Administrative Expense Claims which reflect fees payable pursuant to Section 1930 of title 28 of the United States Code shall be required prior to payment.

### B. *Bar Date for Professional Fee Claims*

172.    All parties seeking allowance or payment of a Fee Claim must File with the Bankruptcy Court and serve upon the Debtors a proof or application for allowance or payment of such Fee Claim in accordance with the Fee Order by the date that is the first Business Day after the date that is ninety (90) days after the Effective Date; *provided, however*, that the Plan Proponents may extend that deadline by agreement without further order by the Bankruptcy Court.

173.    Any Holder of a Fee Claim that does not assert such Claim in accordance with the Fee Order and Section 5.3.2 of the Plan shall have its Claim deemed Disallowed under the Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

174.    Any objection to a Fee Claim shall be Filed and served in accordance with a scheduling order to be entered by the Bankruptcy Court, at the request of the Plan Proponents. Each of the Plan Proponents expressly reserves the right to object to any Fee Claim prior to, on, and after the Effective Date, subject to the provisions of the Plan and the aforementioned scheduling order.

### C. *Bar Date for Rejection Damages Claims*

175.  If the rejection of an executory contract or unexpired lease pursuant to Section 9.1.3 of the Plan (other than an Automatically Rejected Contract) gives rise to a Claim by the other party or parties to such contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors, or their properties, unless a Proof of Claim is Filed and served on the Reorganized Debtors at the addresses set forth in Section 11.9 of the Plan, on the later to occur of (1) 60 days after the Effective Date or (2) 30 days after the date of the entry of an order rejecting such executory contract or unexpired lease.

### III. **Executory Contracts, Unexpired Leases, Letters of Credit, Surety Bonds, Compensation, Indemnity, and Benefit Programs**

176.  The executory contract, unexpired lease, letter of credit, and surety bond provisions of Article IX of the Plan are specifically approved.

177.  For the avoidance of doubt and notwithstanding anything to the contrary in the Plan or this Order, the Settlement Agreement effective September 1, 1993 between Coltec Industries, Inc. and the Aetna Casualty and Surety Company (the "**1993 Agreement**") shall be deemed assumed by Coltec as of the Effective Date. Any Claim against a Debtor that is based on the 1993 Agreement shall be an Administrative Expense Claim to the extent that the Claim was due prior to the Effective Date. Any liability or obligation owed by Coltec that is due on or after the Effective Date shall be a liability and obligation of EnPro Holdings, Inc. which shall be paid pursuant to the terms of the 1993 Agreement in the ordinary course. No obligation or liability arising under the 1993 Agreement shall be a liability or obligation of the Asbestos Trust.

## IV.    Matters Relating to Implementation of the Plan

### A.    *Actions in Furtherance of the Plan*

178.    Pursuant to Sections 1123 and 1142 of the Bankruptcy Code, as well as the laws of any relevant state governing corporations or other legal entities, without further action by the Bankruptcy Court or the stockholders, members, managers, or board of directors of any Debtor or Reorganized Debtor, the Debtors, the Reorganized Debtors, and the officers of the appropriate Debtor or Reorganized Debtor are authorized to (a) take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan, this Confirmation Order, or the transactions contemplated thereby or hereby (including any and all such actions as any of the Debtors, the Reorganized Debtors, and the officers of the appropriate Debtor or Reorganized Debtor may determine are necessary or appropriate), and (b) execute and deliver, adopt, or amend, as the case may be, any contracts, instruments, releases, and agreements necessary to implement, effectuate, and consummate the Plan.

179.    To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders, members, managers, or directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant to §§ 1123(a)(5) and 1142 of the Bankruptcy Code and applicable state law, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the stockholders, members, managers or directors, as the case may be, of the appropriate Debtor or Reorganized Debtor.

180.    The approvals and authorizations specifically set forth in this Confirmation Order are non-exclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer thereof to take any and all actions necessary or appropriate to implement,

effectuate, and consummate the Plan, this Confirmation Order, the Plan Documents or the transactions contemplated thereby or hereby.

181.    The Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos Protected Parties, the Asbestos Insurance Entities, the Asbestos Trust, and all Holders of Plan Claims receiving Distributions under this Plan and all other parties in interest are hereby authorized to, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred after the Effective Date in connection therewith.

182.    On and after the Effective Date, the Reorganized Debtors and the Asbestos Trust may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, the Plan or any of the Plan Documents, with each such Entity to bear its own costs in connection therewith.

### B.    *Compensation and Benefit Programs*

183.    The Reorganized Debtors shall continue, automatically and without further act, deed, or court order, their existing employee compensation, employment-related indemnity agreements, and benefit plans, programs, and policies, and cure any defaults that may exist under such agreements, plans, programs, and policies, including payment of the Debtors' voluntary supplemental pension payments which were limited during the pendency of these' Chapter 11 Cases, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable compensation and benefit plan, other agreement, or applicable nonbankruptcy law.

184. The Reorganized Debtors shall have the authority to pay retiree benefits (as defined in Section 1114(a) of the Bankruptcy Code) and any similar health, disability, or death benefits in accordance with the terms of the retiree benefit plans or other agreements governing the payment of such benefits, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable retiree benefits plan, other agreement, or applicable nonbankruptcy law.

185. From and after the Effective Date, the Reorganized Debtors shall have authority to continue to pay valid Workers' Compensation Claims in accordance with applicable nonbankruptcy law, subject to any rights to amend, modify, or terminate such benefits pursuant to applicable nonbankruptcy law.

## V. The Asbestos Trust

### A. *Creation of the Asbestos Trust*

186. Effective as of the day immediately preceding the Effective Date, the Asbestos Trust shall be created pursuant to Section 524(g) of the Bankruptcy Code and in accordance with the Plan Documents. Plan § 7.8(i). The Asbestos Trust shall be a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to Section 468B of the IRC and shall be subject to the continuing jurisdiction of the Bankruptcy Court. Plan § 7.8(j). The Asbestos Trust and the Trustee thereof is authorized and empowered to receive the property to be transferred to the Asbestos Trust pursuant to Section 7.3.2 of the Plan. The Asbestos Trust Agreement and the CRP shall be substantially in the forms attached as Exhibits A and B to the Plan respectively.

**B.** *Funding of the Asbestos Trust and Vesting of Asbestos Trust Assets*

187.    The Asbestos Trust shall be funded in accordance with Section 7.3.2 of the Plan. Upon the transfer of the Asbestos Trust Assets to the Asbestos Trust, the Asbestos Trust Assets shall be indefeasibly and irrevocably vested in the Asbestos Trust free and clear of all claims, Equity Interests, Encumbrances, and other interests of any Entity, subject to the Asbestos Channeling Injunction and other provisions of the Plan.

**C.** *Transfer of Claims and Demands to the Asbestos Trust*

188.    On the Effective Date, without any further action of any Entity, all liabilities, obligations, and responsibilities of any Asbestos Protected Party, financial or otherwise, with respect to all Asbestos Claims shall be channeled to and assumed by the Asbestos Trust (except as provided in Sections 7.3.7, 8.4.2, and 8.5 of the Plan, and the Cooperation Agreement), and the Reorganized Debtors and other Asbestos Protected Parties shall have no liability or responsibility, financial or otherwise, for any Asbestos Claims, other than to transfer the Asbestos Trust Assets to the Asbestos Trust in accordance with the Plan.

**D.** *Assignment and Enforcement of Asbestos Trust Causes of Action*

189.    On the Effective Date, by virtue of the confirmation of the Plan, without further notice, action, or deed, the Asbestos Trust Causes of Action shall be automatically transferred and assigned to, and indefeasibly vested in, the Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to §1123(b)(3)(B) of the Bankruptcy Code with respect to the Asbestos Trust Causes of Action, with the exclusive right to enforce the Asbestos Trust Causes of Action against any Entity in accordance with Section 7.3.4 of the Plan. The proceeds of the recoveries on any of the Asbestos Trust Causes of Action shall be deposited in and become the property of the Asbestos Trust.

**E.** *Appointment of Asbestos Trustee*

190.    The appointment of Lewis R. Sifford as the initial Asbestos Trustee is approved.

**F.** *Creation of the CAC*

191.    The CAC shall be established pursuant to the Asbestos Trust Agreement and shall have the functions, duties, and rights provided in the Asbestos Trust Agreement.

**G.** *Continuation of the FCR*

192.    The FCR shall (subject to the provisions in Section VI of the Asbestos Trust Agreement) continue to serve through the termination of the Asbestos Trust in order to perform the functions required by the Asbestos Trust Agreement.

**H.** *Cooperation Agreement*

193.    On the Effective Date, the Reorganized Debtors and the Asbestos Trust shall enter into a cooperation agreement substantially in the form included as Exhibit C in the Exhibit Book (subject to the Trustee's opportunity to review and propose changes thereto as provided in paragraph 79 of this Order).

**I.**    *Institution and Maintenance of Legal and Other Proceedings*

194.    On and after the Effective Date, without any further action of the Bankruptcy Court or any Entity, the Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust.

**VI.    Releases, Exculpation, and Indemnification Provisions**

195.    Each of the release, exculpation, and indemnification provisions set forth in the Plan is hereby approved in all respects, is incorporated herein in its entirety, is so ordered, and shall be immediately effective on the Effective Date of the Plan without further action or notice

by this Court or the Bankruptcy Court, any of the parties to such releases, exculpations, and indemnifications, or any other party. This includes the provisions in Sections 7.15, 8.4.1, 8.4.2, 8.4.3, 8.4.4, 8.4.6, 8.4.7, and 11.6 of the Plan, captioned as follows:

| | |
|---|---|
| 7.15 | No Successor Liability |
| 8.4.1 | Settlement and Release by Debtors and Reorganized Debtors of Avoidance Actions and Other Estate Claims |
| 8.4.2 | Specific Release of Intercompany Asbestos Claims |
| 8.4.3 | Settlement and Release by Debtors and Estate Parties |
| 8.4.4 | Settlement and Release of Certain Claims |
| 8.4.6 | Indemnification of Representatives of the Debtors and Non-Debtor Affiliates |
| 8.4.7 | Indemnification of Debtors and Other Asbestos Protected Parties by the Asbestos Trust |
| 11.6 | Dissolution of the Unsecured Creditors Committee and the Asbestos Claimants Committee |

196. Effective on the occurrence of the Effective Date, pursuant to Section 8.4.5 of the Plan, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan (collectively, **"Released Claims"**) shall be permanently enjoined from taking any of the following actions against any Entity released pursuant to the Plan, or any of its property, on account of any Released Claims: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Entity; and (e) commencing or continuing

any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan; *provided, however,* that nothing shall bar, enjoin, or extinguish the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities holding Asbestos Claims to assert such Asbestos Claims against the Asbestos Trust in accordance with the CRP.

197.   None of the Reorganized Debtors, the Debtors, the Reorganization-Involved Affiliates, the FCR, the Asbestos Claimants Committee (including each of its members and their respective counsel), the Unsecured Creditors Committee, the Ad Hoc Coltec Future Asbestos Claimants' Representative, the Ad Hoc Coltec Asbestos Claimants Committee (including each of its members and their respective counsel), or any of their respective Representatives (the "**Exculpated Parties**") are to have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including the administration of the Estates during the entirety of the Chapter 11 Cases, any work in connection with any plan of reorganization or proceedings in the Chapter 11 Cases, conduct during any contested matter in the Chapter 11 Cases, negotiation of this Plan or the settlements contained therein, the pursuit of confirmation of this Plan, the consummation of this Plan or the settlements provided therein, or the administration of this Plan or the property to be distributed under this Plan so long as, in each case such action, or failure to act, did not constitute willful misconduct or lack of good faith; *provided, however,* that nothing herein shall exculpate, bar, or shield the Exculpated Parties from any Fee Dispute Remedy and nothing herein shall exculpate, bar or shield the Exculpated Parties from any liability for failure to perform their obligations under the Plan Documents on or after the Effective Date. In all respects, the Exculpated Parties will be entitled to rely upon the advice of counsel and financial and other experts or

professionals employed by them with respect to their duties and responsibilities under this Plan, and such reliance shall conclusively establish good faith. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct or lack of good faith. In any suit alleging willful misconduct or lack of good faith, the reasonable attorney's fees and costs of the prevailing party shall be paid by the losing party, and, as a condition of going forward with such action, suit, or proceeding, at the onset thereof, all parties thereto shall be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorney's fees and costs in the event they fail to prevail. Pursuant to its authority under Bankruptcy Code Section 105(a), the Court hereby enjoins permanently the commencement or continuation in any manner, any suit, action, or other proceeding, on account of or respecting any claim, obligation, debt, right, cause of action, remedy, or liability included within the foregoing exculpation.

## VII. Discharge and Related Matters

### A. *Discharge of GST, Garrison, and Coltec*

198. Except as otherwise provided in the Plan, on the Effective Date, all Claims (including Plan Claims, Asbestos Claims, and Disallowed Claims) against GST, Garrison, and Coltec, the Reorganized Debtors, or their Estates, assets, properties, or interests in property (the "**Discharged Debtors**") shall be discharged to the fullest extent permitted by law, regardless whether any such Claim is reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose from any agreement of the Discharged Debtor entered into or obligation of the Discharged Debtor incurred before the Confirmation Date, or from any conduct of the Discharged Debtor prior to the Effective Date

whether or not (i) a proof of claim was filed with respect to such Claim, (ii) such Claim is allowed under Section 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has accepted the Plan, and including, without limitation, all interest, if any, on any such Claims, whether such interest accrued before or after the Petition Date.

199.    The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors pursuant to this Plan. All Entities shall be precluded and forever barred from asserting against the Discharged Debtors or their assets, properties, or interests in property any other or further Claims or Plan Claims based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in the Plan.

**B.** *Discharge Injunction*

200.    With respect to any debts and liabilities discharged by operation of law under Sections 524(a) and 1141(d) of the Bankruptcy Code, the discharge of the Discharged Debtors operates as an injunction, and therefore an injunction is hereby entered, against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the Discharged Debtors, whether or not the discharge of such debt is waived; *provided, however*, that the obligations and duties of the Reorganized Debtors under the Plan or any Plan Document are not so discharged.

**C.** *Non-Dischargeable ERISA Liability*

201.    Nothing contained in the Plan, this Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document Filed in the Chapter 11

Cases shall be construed to discharge, release or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to the Pension Benefit Guaranty Corporation ("**PBGC**") with respect to any pension plans under any law, governmental policy, or regulatory provision. The PBGC shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of any of the provisions of this Plan (including those provisions providing for exculpation, satisfaction, release, and discharge of Claims), this Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document Filed in the Chapter 11 Cases. Notwithstanding the foregoing, neither the PBGC nor any other Entity shall assert any liability or responsibility with respect to any pension plans under any law, governmental policy or regulatory provisions against, and such liability or responsibility shall not attach to the Asbestos Trust or any of the Asbestos Trust Assets.

## VIII. The Asbestos Channeling Injunction

202.    In order to supplement, where necessary, the injunctive effect of the discharge provided by Sections 1141(d), 524(a), and 105(a) of the Bankruptcy Code and as described in Section 8.1 of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of this Court under Section 524(g) of the Bankruptcy Code, as supplemented by Section 105(a) of the Bankruptcy Code, the Plan provides for the following injunction, which is hereby approved and authorized in all respects and which shall take effect on and after the Effective Date:

203.    On and after the Effective Date, the sole recourse of the Holder of an Asbestos Claim shall be to the Asbestos Trust pursuant to the provisions of the Asbestos Channeling Injunction and the CRP, and such Holder shall have no right whatsoever at any time to assert its Asbestos Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including any distributions made pursuant to the Plan) in property of

the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party. Without limiting the foregoing and except as provided in Section 8.5 of the Plan, from and after the Effective Date, the Asbestos Channeling Injunction shall apply to all present and future Holders of Asbestos Claims, and all such Holders shall be permanently and forever stayed, restrained, and enjoined from taking any and all legal or other actions or making any Claim or Demand against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party (including distributions made pursuant to the Plan), for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any Asbestos Claim, other than from the Asbestos Trust in accordance with the Asbestos Channeling Injunction and pursuant to the CRP, including:

a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

d) setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim; and

e) proceeding in any other manner with regard to any matter that is subject to resolution by the Asbestos Trust in accordance with the Plan and related documents, except in conformity and compliance with the CRP.

204. Notwithstanding anything to the contrary above, the Asbestos Channeling Injunction shall not bar, enjoin, or extinguish:

(a) the rights of Entities to the treatment accorded them under this Plan, including the rights of Entities holding Asbestos Claims to assert such Asbestos Claims against the Asbestos Trust in accordance with the CRP;

(b) the rights of the Debtors or Reorganized Debtors to assert or prosecute against any Entity, including any Asbestos Insurance Entity, any cause of action, Claim, Demand, debt, obligation, or liability for payment based on or arising from the Asbestos Insurance Rights; and

(c) the rights of the Debtors or Reorganized Debtors to receive any settlement, award, payment of cash or other property of any kind whatsoever from any Entity including any Asbestos Insurance Entity in satisfaction of any Asbestos Insurance Rights.

## IX. Term of Certain Injunctions and Automatic Stay

### A. *Injunctions and/or Automatic Stays in Existence Immediately Prior to Confirmation*

205. All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases and in existence immediately prior to the Confirmation Date, whether pursuant to Sections 105 and 362 of the Bankruptcy Code, or any other provision under applicable law, shall remain in full force and effect until the injunctions set forth in this Plan become effective, and thereafter if so provided by the Plan, this Confirmation Order, or by their own terms. In addition, on and after the Confirmation Date, the Plan Proponents, acting unanimously, may seek such further orders as they may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

**B.** *Injunctions Provided for in the Plan*

206.    Each of the injunctions provided for in the Plan and this Confirmation Order shall become effective on the Effective Date and shall continue in effect at all times thereafter.

## X.    Carve-Out for Certain Foreign Asbestos Claims

207.    Notwithstanding anything herein to the contrary, nothing in the Plan or this Confirmation Order shall discharge, bar, enjoin, release, or extinguish any Foreign Asbestos Claim, unless the Foreign Asbestos Claim is filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States.

## XI.    No Effect on Independent Liabilities of Non-Debtors

208.    Notwithstanding any provision to the contrary, nothing contained in the Plan, any Plan Document, this Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document Filed in the Chapter 11 Cases shall be construed to discharge, enjoin, release, or channel to the Asbestos Trust any liability or obligation of a non-Debtor Entity not derived from that of a Debtor, including, without limitation, any independent liability of a non-Debtor Entity that is not an Affiliate of, successor of, successor-in-interest to, merger partner of, or transferor of assets to a Debtor as of the Petition Date.

## XII.    Issues Related to Plan and Objections to Confirmation

209.    The Court has considered Travelers' objections to confirmation (Docket Nos. 5617, 5769, 5771, and 5870), the Debtors' response thereto (Docket No. 5908), Travelers' reply (Docket No. 5925), the statements of counsel, briefs and all other testimony and evidence admitted as part of the Confirmation Hearing. For the reasons stated by the Bankruptcy Court on the record at the hearing of May 15, 2017, the Court overrules Travelers' objection.

210. For the avoidance of doubt, the Court also makes the following Findings of Fact and Conclusions of Law:

    a. Debtors have never had any intention to prejudice Travelers' rights under the Settlement Agreement dated September 1, 1993 between Coltec Industries Inc and The Aetna Casualty and Surety Company (the "1993 Agreement"), or any intention to seek findings that would have a preclusive effect on Travelers' rights or obligations under the 1993 Agreement or the insurance policies under which SPX and FMPC claim coverage.

    b. The Court's Findings of Fact and Conclusions of Law will have no preclusive effect on Travelers in future insurance coverage litigation.

    c. Any findings and conclusions the Court makes in connection with confirmation will not bind Travelers or have any preclusive effect on it in future coverage litigation.

## XIII. Committees and FCR

211. In accordance with Section 11.6 of the Plan, on the Effective Date, except as set forth below, the Asbestos Claimants Committee and the Unsecured Creditors Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and those committees shall be deemed dissolved. On and after the Effective Date, the rights, duties, and responsibilities of the FCR shall be as set forth in the Asbestos Trust Agreement.

212. Notwithstanding the foregoing, if the Effective Date occurs prior to the entry of a Final Order with respect to final applications of Professionals for allowance and payment of Fee Claims, the Unsecured Creditors Committee and the Asbestos Claimants Committee may, at

their option, continue to serve with respect to those proceedings exclusively until a Final Order is entered with respect to such proceedings. Additionally, effective as of the Effective Date, the CAC shall succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Asbestos Claimants Committee and shall enjoy the work product protections that were applicable or available to the Asbestos Claimants Committee before its dissolution.

## XIV.   Exemptions from Taxation

213.    Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any tax: (i) the creation of any Encumbrances; (ii) the making or assignment of any lease or sublease; (iii) the execution and implementation of the Asbestos Trust Agreement, including the creation of the Asbestos Trust and any transfers to or by the Asbestos Trust; or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments, applications, certificates, or statements executed or filed in connection with any of the foregoing or pursuant to the Plan.

## XV.   Retention of Jurisdiction by the Bankruptcy Court and the District Court

214.    Pursuant to Sections 105(a), 524(a), 1141(d), and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction, except as provided in Section 10.9 of the Plan, over any proceeding (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or this Plan, or (c) involving the matters in Sections 10.1 through 10.9 of the Plan, provided that the District Court shall retain jurisdiction to hear and determine such matters in the first instance (i) as to which the automatic reference to the Bankruptcy Court has been withdrawn, (ii) to the extent the Bankruptcy Court lacks

adjudicatory authority under the United States Constitution to hear and determine such matters in the absence of consent of the parties involved, (iii) to the extent required by law, or (iv) to the extent set forth in Section 10.11 of the Plan. In accordance with Section 524(g)(2)(A) of the Bankruptcy Code, any proceeding that involves the validity, application, construction, or modification of the Asbestos Channeling Injunction may be commenced only in the District Court and the District Court shall have exclusive jurisdiction over any such proceeding without regard to the amount in controversy; *provided, however*, that such proceeding, if so authorized by law or rule of court, may be referred to the Bankruptcy Court. This Court hereby refers all post-confirmation proceedings in these cases to the Bankruptcy Court.

## XVI.  Notice of Entry of Confirmation Order

215.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Reorganized Debtors are directed to serve, within ten (10) days after the occurrence of the Effective Date, a notice of the entry of this Confirmation Order, which shall include notice of the bar dates established by the Plan and this Confirmation Order, the issuance of the injunctions pursuant to the Plan, and notice of the Effective Date, substantially in the form of **Exhibit 2** attached hereto and incorporated herein by reference (the "**Confirmation Notice**"), on all parties that received notice of the Confirmation Hearing; *provided, however*, that, with respect to Asbestos Claims, the Reorganized Debtors are authorized to serve the Confirmation Notice only on counsel of record for holders of Asbestos Claims; *provided further* that the Reorganized Debtors shall serve the Confirmation Notice on individual holders of Asbestos Claims who have appeared in any of these Chapter 11 Cases without counsel by filing a proof of claim or casting a ballot with respect to the now-superseded Second Amended Plan or the now-confirmed Plan.

216. As soon as practicable after the entry of this Confirmation Order, the Debtors shall make copies of this Confirmation Order and the Confirmation Notice available on the Debtors' website for these Chapter 11 Cases.

217. No later than twenty (20) business days after the Effective Date, the Reorganized Debtors are directed to publish the version of the Confirmation Notice attached hereto as **Exhibit 3** once in the national edition of *USA Today*. The Reorganized Debtors are authorized to pay all fees associated with such publication.

218. All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Court at the hearing on confirmation of this Plan, shall be paid by the Debtors on or before the Effective Date.

*12 June 17*

*Graham C. Mullen*

*SR US Judge*

# Exhibit 1

Each of the following Entities listed below (and as defined in the Plan) qualifies under one or more of the categories of "Asbestos Protected Party," as set forth in Section 1.1(21) of the Plan. Nothing in this Exhibit 1 shall be construed to modify or supersede the definition of "Asbestos Protected Party" in the Plan.

**a. GST, Garrison, and Coltec;**

**b. the Reorganized Debtors;**

**c. Anchor and Post-Bankruptcy Anchor (but only to the extent that the liability asserted against Anchor or Post-Bankruptcy Anchor derives from the conduct, operations, or products of GST or Coltec or is based on Anchor's relation to GST, Garrison, or Coltec as an Affiliate);**

**d. any current or former Affiliate of each of the Debtors or Reorganized Debtors (including the Entities specified on Exhibit D in the Exhibit Book, and listed immediately below), to the extent that any liability is asserted to exist as a result of such Entity's being or having been such an Affiliate;**

1. <u>Current Affiliates</u>

Applied Surface Technology, Inc.
Belfab, Inc.
Coltec Finance Company Limited
Coltec Industries France SAS
Coltec Industries Pacific Pte Ltd
Coltec International Services Co.
Compressor Products Holdings Limited
Compressor Products International - Indústria de Compressores Ltda.
Compressor Products International Canada, Inc. (dba: CPI Service – Allwest, CPI Service - Mid Western Compressor Supplies, CPI Service - Mid Western Machine Works, CPI Service – Texflo)
Compressor Products International GmbH
Compressor Products International Limited
Compressor Products International LLC (dba: CC Technology, Coltec Industrial Products LLC, CT Technology, Premier Lubrication Systems Inc, Progressive Equipment, Inc., Premier Lubrication Systems, Inc.)
Compressor Products International Ltda.
Compressor Products Int'l Shanghai Co., Ltd.
CPI Investments Limited
CPI Pacific Pty Limited
CPI-LIARD SAS

EnPro Associates, LLC
EnPro Corporate Management Consulting (Shanghai) Co., Ltd.
EnPro German Holding GmbH
EnPro Holdings, Inc. (f/k/a New Coltec Inc.)
EnPro Hong Kong Holdings Company Limited
EnPro Industries Int'l Trading (Shanghai) Co., Ltd.
EnPro Industries, Inc.
EnPro Industries, Inc. Political Action Committee
EnPro Luxembourg Holding Company S.a.r.l.
Fairbanks Morse Engine France E.U.R.L.
Fairbanks Morse, LLC
Garlock (Great Britain), Limited (dba: Garlock (Middle East))
Garlock de Mexico, S.A. de C.V.
Garlock Do Brasil Produtos Industriais Ltda.
Garlock GmbH
Garlock Hygienic Technologies, LLC (dba: Rubber Fab Technologies Group)
Garlock India Private Limited
Garlock International Inc.
Garlock of Canada Ltd
Garlock Overseas Corporation
Garlock Pty Limited
Garlock Pipeline Technologies Limited (f/k/a Pipeline Seal & Insulator Co. Limited)
Garlock Pipeline Technologies, Inc.
Garlock Sealing Technologies (Shanghai) Co., Ltd.
Garlock Singapore Pte. Ltd. (dba: Garlock Sanitron, Garlock Sealing Technologies)
Garlock Taiwan Corporation
Garlock Valqua Japan, Inc.
GGB Austria GmbH
GGB Bearing Technology (Suzhou) Co., Ltd.
GGB Brasil Industria De Mancais E Componentes Ltda.
GGB France E.U.R.L.
GGB Heilbronn GmbH
GGB Italy s.r.l.
GGB Kunstoff-Technologie GmbH
GGB LLC (dba: GGB Bearing Technology LLC)
GGB Real Estate GmbH
GGB Slovakia s.r.o
GGB Tristar Suisse SA
GGB, Inc.
Link Seal Japan Ltd.
Pipeline Seal & Insulator Co. Limited
Player & Cornish Limited
PSI Products GmbH
Qualiseal Technology, LLC
Robix Limited

STEMCO Kaiser Incorporated (dba: STEMCO Air Springs, Stemco Rome, V. W. Kaiser Engineering, Incorporated)
Stemco LP (dba: Stemco of Washington LP)
STEMCO Productos Industriales, S. de R.L. de C.V.
Stemco Products, Inc. (dba: Stemco Motor Wheel)
Stemco Vehicle Technology (Shanghai) Co., Ltd.
Stempro de Mexico, S. de R.L. de C.V.
Stempro Mexico Acquisition Co., S. de R.L. de C.V.
Technetics Group Daytona, Inc.
Technetics Group France SAS
Technetics Group Germany GmbH
Technetics Group LLC
Technetics Group Oxford, Inc. (f/k/a Fabrico, Inc.)
Technetics Group Singapore Pte. Ltd.
Technetics Group UK Limited
Technetics UK Limited
Tribochem, Lda


2.    Former or Dormant Affiliates, and Predecessors

Advanced Transit Dynamics, Inc.
Alfa Engineering S.r.l.
Allwest Compressor Products ULC
Alsdorf Corporation
Amicon Plastics
Best Acquisition I, Inc.
Best Holdings I, Inc.
CAB – Compressor Indústria e Comércio Ltda.
CAB Compressores Indústria e Comércio Ltda.
Cefilac
Coltec Productos y Servicios, S.A.
Centraco Corporation
Central Moloney Inc
Central Transformer Corporation
Central Transformer Inc
Colt Delavan Inc
Colt Industries Inc
Colt Industries Operating Corp.
Colt Industries Pennsylvania Corporation
Coltec do Brasil Produtos Industriais Ltda.
Coltec Industrial Products Inc
Coltec Industrial Products LLC
Coltec Industries Inc
Coltec Industries, Inc.
Coltec Productos y Servicios, S.A.

Commercial Vehicle Technology Company Limited
Compressor Products Holdings, Inc.
Compressor Products International Colombia S.A.S.
Compressor Sales & Service Co., Ltd.
Compressor Services Holdings, Inc.
Corrosion Control Corporation
Corrosion Control Corporation (D/B/A Pikotek)
CPI Asia Co., Ltd.
CPI Service (Thailand) Ltd.
CPI Service Baton Rouge, Inc.
CPI Services Colombia
Crucible Inc.
Delavan Inc
Delavan Newco Inc
Delavan Spray, LLC
Delavan-Carroll Inc.
Delavan-Delta, Inc.
EnPro India Private Limited
EnPro Learning System, LLC
F.D. Farnam Co.
F.D. Farnam Inc
Fabrico Acquisition Company
Fairbanks Morse & Co.
Fairbanks Morse, Inc.
Fairbanks Whitney Corporation
Farnam Sealing Systems Inc.
France Inc.
Franken Plastik GmbH
FSS Divestiture Corp.
Garlock Bearings LLC
Garlock France, SAS
Garlock Korea, Inc.
Garlock of Canada Ltd. – Sherbrooke
GGB Great Britain Limited
GGB Holdings E.U.R.L.
GGB UK Limited
GGB Verwaltungsgesellschaft GmbH
GIB Holdings Inc
Glacier Garlock Bearings GmbH
Glacier Garlock Bearings GmbH & CO KG
Glacier Garlock Bearings LLC
Glacier Garlock Bearings, Inc.
Goodrich Corporation
Goodrich Pump and Engine Control Systems Inc
Goodyear Productos Industriales, S. de R.L. de C.V.
Holley Automotive Systems GmbH

4

Holley Carburetor Company
HTCI Inc.
INGLEBY (1530) LIMITED
Kenlee Daytona LLC
Kunshan Q-Tech Air System Technologies Ltd.
Liard S.A.S
Manraf Inc
Motorwheel Commercial Vehicle Systems, Inc.
Pennsylvania Coal & Coke Corporation
Penn-Texas Corporation
Pipeline Seal & Insulator Co. Limited
Player & Cornish P.E.T. Limited
Productos Industriales Goodyear, S.A. de C.V.
PSI [SEA] SDN BHD
QFM Sales and Services, Inc.
Quincy Inc
Rencol Limited
SD Friction, LLC
Société Grayloise de Participation
SPINDEX LIMITED
Starfab Corporation
Stemco Crewson LLC
Stemco Delaware LP
Stemco Holdings Delaware, Inc.
Stemco Holdings, Inc.
Stemco Inc
Stemco Manufacturing Company Inc.
Stemco, LLC
Tailwind Merger Sub, Inc.
Tara Technologies Corporation
Tempera Pte Ltd
Texflo Compressor Services, ULC
The Goodyear Tire and Rubber Company of Mexico, S.A.
Triple P, Inc.
V.W. Kaiser Engineering, Incorporated
Veyance Productos Industriales, S. de R.L. de C.V.
Wide Range Elastomers Limited

e. **Coltec's former divisions and their successor Entities specified on Exhibit D in the Exhibit Book (also listed immediately below), as well as any successor Entities added to Exhibit D as Asbestos Protected Parties pursuant to Section 7.3.10 hereof (but, in any case, the successor Entities only in their respective capacities as successors);**

1. <u>Current or Former Divisions and Successor Entities (or Affiliates)</u>

Atlas Copco (China) Investment Company Ltd.
Central Moloney
Central Moloney, Inc.
Central Moloney Transformer
Delavan
Delavan-Carroll
Delavan Gas Turbine Products
Delavan Power Generation
Delavan Spray
Delavan Steel Treating
Farnam
Farnam Sealing Systems
Farnam Sealing Systems Inc.
France Compressor
France Compressor Products
France Products
FSS Acquisition Corp
General Signal Corporation
L&J Technologies
Meillor S.A.
Quincy Compressor
Quincy Compressor LLC (f/k/a Fulcrum Acquisition LLC)
SPX Corporation
Pentair, Inc.
Fairbanks Morse Pump Corporation
FMPD Purchasing Corporation

f. **the Asbestos Insurance Entities listed as Asbestos Protected Parties on Exhibit E in the Exhibit Book (also listed immediately below), as well as any Asbestos Insurance Entities added to Exhibit E as Asbestos Protected Parties pursuant to Section 7.3.10 hereof;**

1. AIG-related Companies: American Home Assurance Company, AIU Insurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, PA, and Lexington Insurance Company, and their parent corporations, divisions, assigns, predecessors and successors, and their shareholders, officers, directors, employees, attorneys, agents and representatives.

2. Brittany Insurance Company Ltd.

3. TIG Insurance Company (as successor to Mt. McKinley Insurance Company) and Everest Reinsurance Company (formerly known as Prudential Reinsurance Company)

4. Travelers Casualty and Surety Company formerly known as The Aetna Casualty and Surety Company ("Travelers C and S"), **but Travelers C and S will be an Asbestos Protected Party only as to claims against it with respect to the following policies:**

| Policy Number | Policy Begin Date | Policy End Date |
|---|---|---|
| 45 XS 3 SC | 01/01/66 | 01/01/69 |
| 45 XS 506 SC | 01/01/69 | 01/01/72 |
| 45 XS 572 SCA | 01/01/72 | 01/01/75 |
| 45 XS 951 WCA | 01/01/75 | 02/01/76 |
| 01 AL 251549 SCA | 07/01/75 | 07/01/76 |
| 01 AL 260801 SCA | 07/01/76 | 07/01/77 |
| 01 AL 260863 SCA | 07/01/77 | 07/01/78 |
| 01 XS 7105 SCA | 07/01/77 | 07/01/78 |
| 01 GL 01 SCA | 07/01/78 | 07/01/79 |
| 01 AL 265922 SCA | 07/01/78 | 07/01/79 |
| 01 XS 3237 SCA | 07/01/78 | 07/01/79 |
| 01 GL 1472 SCA | 07/01/79 | 07/01/80 |
| 01 AL 265990 SCA | 07/01/79 | 07/01/80 |
| 01 XS 3265 SCA | 07/01/79 | 07/01/80 |
| 01 GL 57441 SCA | 07/01/80 | 07/01/81 |
| 01 AL 314341 SCA | 07/01/80 | 07/01/81 |
| 01 GL 57496 SCA | 07/01/81 | 07/01/82 |
| 01 AL 314381 SCA | 07/01/81 | 07/01/82 |
| 01 GL 248066 SCA | 07/01/82 | 07/01/83 |
| 01 AL 482830 SCA | 07/01/82 | 07/01/83 |
| 01 GL 408972 SCA | 07/01/83 | 07/01/84 |
| 01 AL 482875 SCA | 07/01/83 | 07/01/84 |
| 01 GL 460957 SCA | 07/01/84 | 07/01/85 |
| 01 GL 460957 SRA | 07/01/84 | 07/01/85 |
| 01 AL 578432 SCA | 07/01/84 | 07/01/85 |
| 01 GL 554224 SCA | 07/01/85 | 07/01/86 |
| 01 GL 554214 SRA | 07/01/85 | 07/01/86 |
| 01 AL 590914 SCA | 07/01/85 | 07/01/86 |
| 01 XN 1415 WCA | 07/01/77 | 07/01/78 |
| 01 XN 1842 WCA | 07/01/78 | 07/01/79 |
| 01 XN 2264 WCA | 07/01/79 | 07/01/80 |
| 01 XN 2303 WCA | 07/01/79 | 07/01/80 |
| 01 XN 2694 WCA | 07/01/80 | 07/01/81 |
| 01 XN 2695 WCA | 07/01/80 | 07/01/81 |
| 01 XN 3100 WCA | 07/01/81 | 07/01/82 |
| 01 XN 3101 WCA | 07/01/81 | 07/01/82 |
| 01 XN 3102 WCA | 07/01/81 | 07/01/82 |

| 01 XN 3463 WCA | 07/01/82 | 07/01/83 |
| 01 XN 3785 WCA | 07/01/83 | 07/01/84 |

In addition, Travelers Indemnity Company ("Travelers Indemnity"), **only with respect to the following policies issued to Garlock Inc. between 1950 and 1961:**

| Policy Number |
| --- |
| DS 1478284 |
| DS 338577 |
| DS 4492291 |
| DS 5090175 |
| DS 5608205 |
| DS 6242325 |
| DS 7151152 |
| DS 8012575 |

**Travelers C and S and Travelers Indemnity will not be Asbestos Protected Parties as to claims against them with respect to the following policies (including claims under the Settlement Agreement between Coltec Industries Inc and The Aetna Casualty and Surety Company dated September 1, 1993 with respect to these five policies):**

| Policy Number | Policy Begin Date | Policy End Date |
| --- | --- | --- |
| 01 XN 3786 WCA | 07/01/83 | 07/01/84 |
| 01 XN 265 WCA | 07/01/72 | 07/01/75 |
| 01 XS 1860 SCA | 07/01/74 | 07/01/75 |
| 01 XN 590 SCA | 07/01/74 | 01/01/76 |
| 01 AL 246450 SCA | 07/1/74 | 07/1/75 |

5. Employers Insurance of Wausau, for itself and as successor to Employers Mutual Liability Insurance Co. of Wisconsin

6. Hartford Accident & Indemnity Company and ITT Hartford

7. Allstate Insurance Company, as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company

8. Highlands Insurance Company

9. TIG Insurance Company as successor to Gibraltar Casualty Company

10. North River Insurance Company and TIG Insurance Company, as successor by merger to International Insurance Company, together with all predecessors, successors, assigns, subsidiaries, affiliates, holding companies, parent companies, merged companies and acquired companies, including Fairfax Financial Holdings, International Insurance Company, and RiverStone Claims Management, LLC, and all persons in their capacity as employees, officials,

agents, attorneys, representatives, officers and directors of The North River Insurance Company, TIG Insurance Company, International Insurance Company, and any of the other companies referenced in this paragraph

11. Westport Insurance Company, f/k/a Puritan Insurance Company

12. Certain Underwriters at Lloyd's, London, England, (a) past and current members of the underwriting syndicates listed on Schedule A to the Excess Insurance Company Funding Agreement with Coltec Industries Inc and Garlock Inc dated June 1995; or (b) who are parties to the Confidential Settlement Agreement and released dated July 16, 2004 between Coltec Industries Inc and certain Underwriters at Lloyd's, London

13. Certain Insurance Companies in the London Insurance Market, (a) listed on Schedule A to the Excess Insurance Company Funding Agreement with Coltec Industries Inc and Garlock Inc dated June 1995, or (b) that are parties to the Confidential Settlement Agreement and Release made on November 23, 2004 by and between Coltec Industries Inc, North River Insurance Company, TIG Insurance Company, as successor by merger to International Insurance Company, and certain London Market Insurance Companies

14. Everest Insurance Company formerly known as Prudential Reinsurance Company

15. (i) Equitas Limited, Equitas Reinsurance Limited, Equitas Holdings Limited, Equitas Management Services Limited, and Equitas Policyholders Trust Limited; (ii) all the present and former officers, directors, trustees, employees, subsidiaries, affiliates, representatives, attorneys, and agents of the entities set forth in sub-paragraph (i), and their respective predecessors and successors, if any, in such capacity; and (iii) the respective heirs, executors, administrators, successors, assigns, and reinsurers (as such) of any of the persons identified in sub-paragraphs (i) and (ii)

16. Continental Insurance Company

17. Arrowood Indemnity Company as successor to Royal Indemnity Company

18. Century Indemnity Company, as successor to CCI Insurance Company, successor to Insurance Company of North America, and its parent corporations, divisions, assigns, predecessors and successors, and their shareholders, officers, directors, employees, attorneys, agents and representatives ("Century") (but Century shall be an Asbestos Protected Party only upon payment in full of the Settlement Amount pursuant to the Settlement Agreement and Release Among the Coltec Parties, Century, SPX, and FMPC dated May 12, 2017)

19. Zurich American Insurance Company, for itself and as successor in interest to Zurich Insurance Company, US Branch, and its parent corporations, divisions, assigns, predecessors and successors, and their shareholders, officers, directors, employees, attorneys, agents and representatives ("Zurich") (but Zurich shall be an Asbestos Protected Party only upon payment in full of the Settlement Amount pursuant to the Settlement Agreement and Release Among the Coltec Parties, Zurich, SPX, and FMPC dated May 12, 2017)

20. Employers Mutual Casualty Company and its managing general agent and attorney-in-fact, ProSight Specialty Management Company, Inc., formerly Mutual Marine Office, Inc., and its parent corporations, divisions, assigns, predecessors and successors, and their shareholders, officers, directors, employees, attorneys, agents and representatives

21. Fireman's Fund Insurance Company and its parent corporations, divisions, assigns, predecessors and successors, and their shareholders, officers, directors, employees, attorneys, agents and representatives

22. Munich Re America, Inc., as successor to Executive Risk Indemnity, Inc., as successor to American Excess Insurance Company

23. American Motorists Insurance Company ("AMICO"), and its successors and assigns, including Lumbermens Mutual Casualty Company solely as successor to AMICO, **but AMICO and its successors and assigns shall not be Asbestos Protected Parties with respect to any claims asserted by Coltec, reorganized Coltec, or New Coltec under the Settlement Agreement Concerning Asbestos Claims Between Coltec Industries Inc and American Motorists Insurance Company (the "AMICO Agreement") or under the Policies (as defined in the AMICO Agreement)**

    g.  **any Entity that, pursuant to the Plan or otherwise on or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any of the Debtors, the Reorganized Debtors, the Affiliates of the Debtors or Reorganized Debtors, or any of their respective assets, to the extent that any liability on account of GST Asbestos Claims or Coltec Asbestos Claims is asserted to exist as a result of its becoming such a transferee or successor, including New Coltec;**

    h.  **any Entity that is alleged to be directly or indirectly liable for an Asbestos Claim by reason of such Entity's (i) ownership of a financial interest in a Debtor, a past or present Affiliate of a Debtor, or a predecessor in interest of a Debtor, (ii) involvement in the management of a Debtor or a predecessor in interest of a Debtor, or service as an officer, director or employee of a Debtor or a related party within the meaning of Section 524(g)(4)(A)(iii) of the Bankruptcy Code, or (iii) involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of a Debtor or a related party within the meaning of Section 524(g)(4)(A)(iii) of the Bankruptcy Code, including but not limited to involvement in the Coltec Restructuring;**

    i.  **any Entity that makes a loan to any of the Reorganized Debtors, their Affiliates, the Trust, or to a successor to, or transferee of any of the respective assets of, the Debtors, the Reorganized Debtors, their Affiliates, or the Asbestos Trust, to the extent that any liability is asserted to exist as a result of its becoming such a lender or to the extent that any Encumbrance of assets made in connection with such a loan is sought to be invalidated, upset, or impaired, in whole or in part, as a result of its being such a lender;**

j. each future Affiliate of each of the Debtors, the Reorganized Debtors and the Affiliates of the Debtors or the Reorganized Debtors (but, in any case, only to the extent that any liability is asserted to exist as a result of its being or becoming such an Affiliate); and

k. the Representatives of each of the Debtors, the Reorganized Debtors, and the Affiliates of the Debtors and Reorganized Debtors, respectively, but only to the extent that any liability is asserted to exist as a result of the Representative being, or acting in the capacity as, a Representative of one or more of the aforementioned Entities.

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>GARLOCK SEALING TECHNOLOGIES LLC, et al.,<br><br>        Debtors.[1] | Case No. 3:17-cv-00275-GCM |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND EFFECTIVE DATE**
**OF THE MODIFIED JOINT PLAN OF REORGANIZATION OF**
**GARLOCK SEALING TECHNOLOGIES LLC, ET AL. AND OLDCO, LLC,**
**SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    **Confirmation of the Plan.** On _____, the United States District Court for the Western District of North Carolina (the "**Court**") entered an Order (A) Confirming the Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al. and OldCo, LLC, Successor by Merger to Coltec Industries Inc, (B) Adopting the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law, and (C) Issuing Asbestos Channeling Injunction [Docket No. _____] (together with the exhibits thereto, the "**Confirmation Order**") confirming the Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al. and OldCo, LLC, Successor by Merger to Coltec Industries Inc [Docket No. _____] (the "**Plan**").

2.    **Effective Date.** Pursuant to the Confirmation Order, the Debtors hereby certify and give notice that at 12:01 a.m. (Eastern Time) on [_____], 2017, the Effective Date[2] of the Plan occurred.

3.    **Authority to Consummate the Plan.** Pursuant to the Confirmation Order, subject to the satisfaction of the conditions set forth in Section 7.9 of the Plan, the Debtors were authorized to consummate the Plan on the Effective Date. As of the Effective Date, the terms, conditions and provision of the Plan immediately bind all Holders of Claims and Interests (notwithstanding whether any such Holders failed to vote to accept or reject the Plan, voted or

---

[1]    The "**Debtors**" in these jointly administered cases are Garlock Sealing Technologies LLC ("**GST**"), Garrison Litigation Management Group, Ltd. ("**Garrison**"), The Anchor Packing Company ("**Anchor**"), and OldCo, LLC.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

were deemed to accept the Plan, or voted to reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, in accordance with the provisions of Article 8 of the Plan, to the fullest extent authorized or provided by the Bankruptcy Code, including sections 524 and 1141 of the Bankruptcy Code, and all other applicable law.

4. **Settlement of Claims.**

a. <u>Settlement and Release by Debtors and Reorganized Debtors of Avoidance Actions and Other Estate Claims</u>. Pursuant to Bankruptcy Rule 9019, on the occurrence of the Effective Date, the Debtors and the Reorganized Debtors settle and fully, finally, and forever release, relinquish and discharge (a) each and every Avoidance Action against an Asbestos Protected Party or its Representatives; (b) each and every Avoidance Action against any Holder of an Asbestos Claim (resolved or pending) or such Holder's Representatives; (c) any and all claims against any Asbestos Protected Party, Holder of an Asbestos Claim (resolved or pending), or any Representative of such Holder that are or would have been property of any Debtor's Estate or which any Debtor is or would have been entitled to prosecute as a Debtor in Possession arising under non-bankruptcy law based on or attributable to any allegedly preferential or fraudulent transfers or based on or attributable to any allegedly unlawful payments or transfers or distributions of property made by or on behalf of any Debtor; (d) any and all claims that are or would have been property of any Debtor's Estate or which any Debtor is or would have been entitled to prosecute as a Debtor in Possession, regardless of the legal theory upon which such claims may be predicated, for which any Asbestos Protected Party is asserted to be or to have been derivatively liable for any Asbestos Claim, including, without limitation, any claims based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, malpractice, breach of fiduciary duty, waste, fraud, or conspiracy; and (e) any and all claims in (a)-(d) above where, in the absence of the Debtors' Chapter 11 Cases, such claims might, under substantive law of any jurisdiction, have been treated as claims maintainable not only by the Debtors or the Debtors' Estates themselves, but by creditors of or Claimants against the Debtors. Such released claims shall in no event be asserted against or paid by the Asbestos Trust.

b. <u>Specific Release of Intercompany Asbestos Claims</u>. Pursuant to Bankruptcy Rule 9019, on the Effective Date, each Debtor, Reorganized Debtor, and Non-Debtor Affiliate shall be deemed to have unconditionally waived, released, and extinguished any and all Asbestos Claims against each other Debtor, Reorganized Debtor, or Non-Debtor Affiliate, including all Asbestos Claims set forth in any and all proofs of claim filed by or on behalf of Coltec in the Chapter 11 Cases; *provided, however,* that this release shall not be construed to release, impair, or affect the rights of indemnification contained in Section 8.4.7 of the Plan. Notwithstanding anything in the Plan, the Plan Documents, the Confirmation Order, or the Asbestos Channeling Injunction, the Asbestos Trust shall have no obligation, responsibility, or liability for any of the Asbestos Claims waived, released, and extinguished in accordance with Section 8.4.2 of the Plan.

c.     Settlement and Release by Debtors and Estate Parties. Pursuant to Bankruptcy Rule 9019, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Debtor, in its individual capacity and as a Debtor in Possession for and on behalf of its Estate and its Affiliates, and each Reorganized Debtor on its own behalf and on behalf of its Estate and its Affiliates, and the respective successors and assigns of each such Debtor, Debtor in Possession, Estate, and Affiliate, is hereby deemed to settle and release, absolutely, unconditionally, irrevocably, and forever each and all of the Debtors' Representatives, their Non-Debtor Affiliates' Representatives, and their respective properties ("**Released Parties**"), from any and all claims, obligations, rights, suits, damages, remedies, liabilities, or causes of action in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the Debtors' property, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, and the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, or related agreements, instruments, or other documents, involving any act, omission, transaction, agreement, occurrence, or event taking place on or before the Effective Date, other than any act or omission of a Released Party that constitutes willful misconduct or lack of good faith; *provided, however*, that the obligations and duties of any Released Party under the Plan or any Plan Document are not so settled and released. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct or lack of good faith.

d.     Settlement and Release of Certain Claims. On the Effective Date, the Debtors, Reorganized Debtors, their Affiliates, predecessors, successors, and assigns shall be deemed to release, waive, and permanently extinguish their rights to file or assert in the future any GST Recovery Action. With respect to the pending GST Recovery Actions, such actions and any claims, counterclaims, or countersuits the respective parties asserted or could have asserted therein shall be dismissed with prejudice in exchange for mutual general releases and mutual waivers of costs and attorneys' fees, effective upon delivery of GST Recovery Action Settlement Packages by plaintiffs GST and Garrison and by the respective defendants in the pending GST Recovery Actions.

5.     **No Actions on Account of Released Claims.**

a.     General Releases. Effective on the occurrence of the Effective Date, pursuant to Section 8.4.5 of the Plan, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan (collectively, "**Released Claims**") are permanently enjoined from taking any of the following actions against any Entity released pursuant to the Plan, or any of its property, on account of any Released Claims: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent

with the provisions of the Plan; *provided, however*, that nothing shall bar, enjoin, or extinguish the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities holding Asbestos Claims to assert such Asbestos Claims against the Asbestos Trust in accordance with the CRP.

      b.     Exculpated Parties. None of the Reorganized Debtors, the Debtors, the Reorganization-Involved Affiliates, the FCR, the Asbestos Claimants Committee (including each of its members and their respective counsel), the Unsecured Creditors Committee, the Ad Hoc Coltec Future Asbestos Claimants' Representative, the Ad Hoc Coltec Asbestos Claimants Committee (including each of its members and their respective counsel), or any of their respective Representatives (the "**Exculpated Parties**") are to have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including the administration of the Estates during the entirety of the Chapter 11 Cases, any work in connection with any plan of reorganization or proceedings in the Chapter 11 Cases, conduct during any contested matter in the Chapter 11 Cases, negotiation of the Plan or the settlements contained therein, the pursuit of confirmation of the Plan, the consummation of the Plan or the settlements provided therein, or the administration of the Plan or the property to be distributed under the Plan so long as, in each case such action, or failure to act, did not constitute willful misconduct or lack of good faith; *provided, however*, that nothing herein shall exculpate, bar, or shield the Exculpated Parties from any Fee Dispute Remedy and nothing herein shall exculpate, bar or shield the Exculpated Parties from any liability for failure to perform their obligations under the Plan Documents on or after the Effective Date.

    6.    **Discharge of Claims.**

      a.     Except as otherwise provided in the Plan, on the Effective Date, all Claims (including Plan Claims, Asbestos Claims, and Disallowed Claims) against GST, Garrison, and Coltec, the Reorganized Debtors, or their Estates, assets, properties, or interests in property (the "**Discharged Debtors**") are discharged to the fullest extent permitted by law, regardless whether any such Claim is reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose from any agreement of the Discharged Debtor entered into or obligation of the Discharged Debtor incurred before the Confirmation Date, or from any conduct of the Discharged Debtor prior to the Effective Date whether or not (i) a proof of claim was filed with respect to such Claim, (ii) such Claim is allowed under Section 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has accepted the Plan, and including, without limitation, all interest, if any, on any such Claims, whether such interest accrued before or after the Petition Date. The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors pursuant to the Plan. All Entities shall be precluded and forever barred from asserting against the Discharged Debtors or their assets, properties, or interests in property any other or further Claims or Plan Claims based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in the Plan.

b.     With respect to any debts and liabilities discharged by operation of law under Sections 524(a) and 1141(d) of the Bankruptcy Code, the discharge of the Discharged Debtors operates as an injunction, and therefore an injunction is hereby entered, against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the Discharged Debtors, whether or not the discharge of such debt is waived; *provided, however*, that the obligations and duties of the Reorganized Debtors under the Plan or any Plan Document are not so discharged.

c.     Nothing contained in the Plan, the Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document Filed in the Chapter 11 Cases shall be construed to discharge, release or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to the Pension Benefit Guaranty Corporation ("**PBGC**") with respect to any pension plans under any law, governmental policy, or regulatory provision. The PBGC shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of any of the provisions of the Plan (including those provisions providing for exculpation, satisfaction, release, and discharge of Claims), the Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document Filed in the Chapter 11 Cases. Notwithstanding the foregoing, neither the PBGC nor any other Entity shall assert any liability or responsibility with respect to any pension plans under any law, governmental policy or regulatory provisions against, and such liability or responsibility shall not attach to, the Asbestos Trust or any of the Asbestos Trust Assets.

7.     **Injunctions.**

a.     All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases and in existence immediately prior to the Confirmation Date, whether pursuant to Sections 105 and 362 of the Bankruptcy Code, or any other provision under applicable law, shall remain in full force and effect until the injunctions set forth in the Plan become effective, and thereafter if so provided by the Plan, the Confirmation Order, or by their own terms.

b.     Each of the injunctions provided for in the Plan and the Confirmation Order are effective as of the Effective Date and shall continue in effect at all times thereafter.

8.     **Asbestos Channeling Injunction.**

a.     Pursuant to Section 524(g) of the Bankruptcy Code, as supplemented by Section 105(a) of the Bankruptcy Code, on and after the Effective Date of the Plan, the sole recourse of the Holder of an Asbestos Claim shall be to the Asbestos Trust pursuant to the provisions of the Asbestos Channeling Injunction and the CRP, and such Holder shall have no right whatsoever at any time to assert its Asbestos Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including any distributions made pursuant to the Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party. Without limiting the foregoing and except as provided in Section 8.5 of the Plan, from and after the Effective Date, the Asbestos Channeling Injunction shall apply to all present and future Holders of Asbestos Claims, and all such Holders shall be

permanently and forever stayed, restrained, and enjoined from taking any and all legal or other actions or making any Claim or Demand against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party (including distributions made pursuant to the Plan), for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any Asbestos Claim, other than from the Asbestos Trust in accordance with the Asbestos Channeling Injunction and pursuant to the CRP, including:

        i.     commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

        ii.     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

        iii.     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

        iv.     setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim; and

        v.     proceeding in any other manner with regard to any matter that is subject to resolution by the Asbestos Trust in accordance with the Plan and related documents, except in conformity and compliance with the CRP.

        b.     On the Effective Date, without any further action of any Entity, all liabilities, obligations, and responsibilities of any Asbestos Protected Party, financial or otherwise, with respect to all Asbestos Claims shall be channeled to and assumed by the Asbestos Trust (except as provided in Sections 8.4.2 and 8.5 of the Plan), and the Reorganized Debtors and other Asbestos Protected Parties shall have no liability or responsibility, financial or otherwise, for any Asbestos Claims, other than to transfer the Asbestos Trust Assets to the Asbestos Trust in accordance with the Plan.

        c.     On the Effective Date, by virtue of the confirmation of the Plan, without further notice, action, or deed, the Asbestos Trust Causes of Action shall be automatically transferred and assigned to, and indefeasibly vested in, the Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to §1123(b)(3)(B) of the

Bankruptcy Code with respect to the Asbestos Trust Causes of Action, with the exclusive right to enforce the Asbestos Trust Causes of Action against any Entity in accordance with Section 7.3.4 of the Plan.

9. **Bar Dates.**

a. <u>Bar Date for Administrative Expense Claims.</u> Except as otherwise provided in Section 5.3.2 of the Plan and section 9.b below, unless previously Filed, all requests for payment of an Administrative Expense Claim that is not a Fee Claim shall be filed with the Bankruptcy Court and served on the Debtors at the addresses set forth in Section 11.9 of the Plan so as to be received on or before 4:00 p.m. (Eastern Time) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date (i.e., [_____], 2017), unless otherwise agreed to by the appropriate Debtor or Reorganized Debtor, without further approval by this Court. Any Holder of an Administrative Expense Claim that does not assert such Claim before such deadline shall have its Claim deemed Disallowed under the Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Claim. All objections to Administrative Expense Claims shall be filed and served on the requesting party within sixty (60) days after the Effective Date (i.e., [_____], 2017) (unless the objection deadline is extended by the Court upon request of the Reorganized Debtors). In the event that the Reorganized Debtors object to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to an Administrative Expense Claim seeking payment of postpetition ordinary course trade obligations, postpetition payroll obligations incurred in the ordinary course of a Debtor's postpetition business, and amounts arising under agreements approved by the Bankruptcy Court or the Plan. No request for payment of Administrative Expense Claims which reflect fees payable pursuant to Section 1930 of title 28 of the United States Code shall be required prior to payment.

b. <u>Bar Date for Professional Fee Claims.</u> All parties seeking allowance or payment of a Fee Claim must File with the Bankruptcy Court and serve upon the Debtors a proof or application for allowance or payment of such Fee Claim in accordance with the Fee Order by the date that is the first Business Day after the date that is ninety (90) days after the Effective Date (i.e., [_____], 2017); *provided, however*, that the Plan Proponents may extend that deadline by agreement without further order by the Bankruptcy Court. Any Holder of a Fee Claim that does not assert such Claim in accordance with the Fee Order and Section 5.3.2 of the Plan shall have its Claim deemed Disallowed under the Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim. Any objection to a Fee Claim shall be Filed and served in accordance with a scheduling order to be entered by the Bankruptcy Court, at the request of the Plan Proponents. Each of the Plan Proponents expressly reserves the right to object to any Fee Claim prior to, on, and after the Effective Date, subject to the provisions of the Plan and the aforementioned scheduling order. No request for payment of

Administrative Expense Claims which reflect fees payable pursuant to Section 1930 of title 28 of the United States Code shall be required prior to payment.

        c.     <u>Bar Date for Rejection Damages Claims</u>. If the rejection of an executory contract or unexpired lease pursuant to Section 9.1.3 of the Plan (other than an Automatically Rejected Contract) gives rise to a Claim by the other party or parties to such contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors, or their properties, unless a Proof of Claim is Filed and served on the Reorganized Debtors at the addresses set forth in Section 11.9 of the Plan, on the later to occur of (1) 60 days after the Effective Date or (2) 30 days after the date of the entry of an order rejecting such executory contract or unexpired lease (i.e., [_____], 2017).

       10.    **Bankruptcy Court Address.** For purposes of filing requests for allowance and payment of Administrative Expense Claims, and applications for allowance of Fee Claims or other documents, the address of the Bankruptcy Court is U.S. Bankruptcy Court, Charles R Jonas Federal Building, Western District of North Carolina, 401 West Trade Street, Room 111, Charlotte, NC 28202.

       11.    **Address for Submission of Rejection Damages Claims**. For purposes of filing proofs of claim arising from the rejection of an executory contract or unexpired lease, the address is: Garlock Sealing Technologies LLC, c/o Elizabeth Barry, Chief Restructuring Officer, 349 West Commercial St., Ste. 3050, Rochester, NY 14445.

       12.    **Copies of Confirmation Order.** Copies of the Confirmation Order may be obtained free of charge at [website] or by sending a request, in writing, to Garlock Sealing Technologies LLC, c/o Elizabeth Barry, Chief Restructuring Officer, 349 West Commercial St., Ste. 3050, Rochester, NY 14445.

Dated: _____, 2017                    **BY ORDER OF THE COURT**

ROBINSON, BRADSHAW & HINSON, P.A.
Garland S. Cassada (N.C. Bar No. 12352)
Jonathan C. Krisko (N.C. Bar No. 28625)
Richard C. Worf (N.C. Bar No. 37143)
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536

        - and -

RAYBURN COOPER & DURHAM, P.A.
C. Richard Rayburn, Jr. (N.C. Bar No. 6357)
Albert F. Durham (N.C. Bar No. 6600)
John R. Miller, Jr. (N.C. Bar No. 28689)
1200 Carillion, 227 West Trade Street
Charlotte, NC 28202
Telephone: (704) 334-0891

        - and -

PARKER POE ADAMS & BERNSTEIN, LLP
Daniel G. Clodfelter (N.C. Bar No. 7661)
Ashley A. Edwards (N.C. Bar No. 40695)
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 335-9054

ATTORNEYS FOR THE REORGANIZED DEBTORS

**Exhibit 3**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

IN RE:

GARLOCK    SEALING    TECHNOLOGIES
LLC, et al.,                                                    Case No. 3:17-cv-00275-GCM

Debtors.[1]

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND EFFECTIVE DATE
OF THE MODIFIED JOINT PLAN OF REORGANIZATION OF
GARLOCK SEALING TECHNOLOGIES LLC, ET AL. AND OLDCO, LLC,
SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      **Confirmation of the Plan.** On [_____], the United States District
Court for the Western District of North Carolina (the "**Court**") entered an Order (A) Confirming
the Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al. and
OldCo, LLC, Successor by Merger to Coltec Industries Inc, (B) Adopting the Bankruptcy
Court's Proposed Findings of Fact and Conclusions of Law, and (C) Issuing Asbestos
Channeling Injunction [Docket No. _____] (together with the exhibits thereto, the
"**Confirmation Order**") confirming the Modified Joint Plan of Reorganization of Garlock
Sealing Technologies LLC, et al. and OldCo, LLC, Successor by Merger to Coltec Industries Inc
[Docket No. _____] (the "**Plan**").

2.      **Effective Date.** Pursuant to the Confirmation Order, the Debtors hereby certify
and give notice that at 12:01 a.m. (Eastern Time) on [_____], 2017, the Effective
Date[2] of the Plan occurred.

3.      **Releases.** The confirmed Plan provides various releases. Except as otherwise
expressly set forth in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors
are released from all claims, commitments, obligations, suits, judgments, damages, demands,
debts, causes of action or liabilities that are released pursuant to the Plan (collectively, "**Released
Claims**"), and all Entities that have held, currently hold or may hold any Released Claims are

---

[1]     The "**Debtors**" in these jointly administered cases are Garlock Sealing Technologies LLC ("**GST**"),
Garrison Litigation Management Group, Ltd. ("**Garrison**"), The Anchor Packing Company ("**Anchor**"),
and OldCo, LLC.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

permanently enjoined from taking any of the following actions against any Entity released pursuant to the Plan, or any of its property, on account of any Released Claims: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

4. **Discharge of Claims.** Pursuant to the Confirmation Order, with certain limited exceptions, the rights afforded under the Plan and the treatment of Claims under the Plan are in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. With certain limited exceptions, confirmation of the Plan will, as of the Effective Date, discharge the Debtors from all Claims.

5. **Injunctions Issued Pursuant to the Confirmation Order.**

a. <u>Asbestos Channeling Injunction.</u> Pursuant to the Confirmation Order and Section 524(g) of the Bankruptcy Code as supplemented by Section 105(a) of the Bankruptcy Code, the Court issued an Asbestos Channeling Injunction providing that, on or after the effective date, the sole recourse of the Holder of an Asbestos Claim shall be to the Asbestos Trust pursuant to the provisions of the Asbestos Channeling Injunction and the CRP, and such Holder shall have no right whatsoever at any time to assert its Asbestos Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including any distributions made pursuant to the Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party.

b. <u>Other Injunctions.</u> Pursuant to the Confirmation Order, each of the other injunctions provided for in the Plan and the Confirmation Order, whether pursuant to Sections 105, 524(a) or 1141(d) of the Bankruptcy Code, are effective as of the Effective Date and shall continue in effect at all times thereafter.

6. **FOR THE SPECIFIC TERMS AND CONDITIONS OF THESE INJUNCTIONS AND THE PRECISE SCOPE OF THE CLAIMS AND DEMANDS TO BE CHANNELED TO THE ASBESTOS TRUST, PLEASE REFER TO THE SPECIFIC TERMS OF THE PLAN, WHICH CAN BE OBTAINED FREE OF CHARGE AT [website] OR BY SENDING A REQUEST, IN WRITING, TO GARLOCK SEALING TECHNOLOGIES LLC, C/O ELIZABETH BARRY, CHIEF RESTRUCTURING OFFICER, 349 WEST COMMERCIAL ST., STE. 3050, ROCHESTER, NY 14445.**

7. **Bar Dates.**

a. <u>Bar Date for Administrative Expense Claims.</u> Except as otherwise provided in Section 5.3.2 of the Plan and section 9.b below, unless previously Filed, all requests for payment of an Administrative Expense Claim that is not a Fee Claim shall be filed with the Bankruptcy Court and served on the Debtors at the addresses set forth in Section 11.9 of the Plan

so as to be received on or before 4:00 p.m. (Eastern Time) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date (i.e., [_____], 2017), unless otherwise agreed to by the appropriate Debtor or Reorganized Debtor, without further approval by this Court. Any Holder of an Administrative Expense Claim that does not assert such Claim before such deadline shall have its Claim deemed Disallowed under the Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Claim. All objections to Administrative Expense Claims shall be filed and served on the requesting party within sixty (60) days after the Effective Date (i.e., [_____], 2017) (unless the objection deadline is extended by the Court upon request of the Reorganized Debtors). In the event that the Reorganized Debtors object to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to an Administrative Expense Claim seeking payment of postpetition ordinary course trade obligations, postpetition payroll obligations incurred in the ordinary course of a Debtor's postpetition business, and amounts arising under agreements approved by the Bankruptcy Court or the Plan. No request for payment of Administrative Expense Claims which reflect fees payable pursuant to Section 1930 of title 28 of the United States Code shall be required prior to payment.

       b.    <u>Bar Date for Professional Fee Claims</u>. All parties seeking allowance or payment of a Fee Claim must File with the Bankruptcy Court and serve upon the Debtors a proof or application for allowance or payment of such Fee Claim in accordance with the Fee Order by the date that is the first Business Day after the date that is ninety (90) days after the Effective Date (i.e., [_____], 2017); *provided, however,* that the Plan Proponents may extend that deadline by agreement without further order by the Bankruptcy Court. Any Holder of a Fee Claim that does not assert such Claim in accordance with the Fee Order and Section 5.3.2 of the Plan shall have its Claim deemed Disallowed under the Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim. Any objection to a Fee Claim shall be Filed and served in accordance with a scheduling order to be entered by the Bankruptcy Court, at the request of the Plan Proponents. Each of the Plan Proponents expressly reserves the right to object to any Fee Claim prior to, on, and after the Effective Date, subject to the provisions of the Plan and the aforementioned scheduling order. No request for payment of Administrative Expense Claims which reflect fees payable pursuant to Section 1930 of title 28 of the United States Code shall be required prior to payment.

       c.    <u>Bar Date for Rejection Damages Claims</u>. If the rejection of an executory contract or unexpired lease pursuant to Section 9.1.3 of the Plan (other than an Automatically Rejected Contract) gives rise to a Claim by the other party or parties to such contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors, or their properties, unless a Proof of Claim is Filed and served on the Reorganized Debtors at the addresses set forth in Section 11.9 of the Plan, on the

later to occur of (1) 60 days after the Effective Date or (2) 30 days after the date of the entry of an order rejecting such executory contract or unexpired lease (i.e., [_____], 2017).

8.    **Copies of Confirmation Order.** Copies of the Confirmation Order may be obtained free of charge at [website] or by sending a request, in writing, to Garlock Sealing Technologies LLC, c/o Elizabeth Barry, Chief Restructuring Officer, 349 West Commercial St., Ste. 3050, Rochester, NY 14445.


Dated: _____, 2017                     **BY ORDER OF THE COURT**


ROBINSON, BRADSHAW & HINSON, P.A.
Garland S. Cassada (N.C. Bar No. 12352)
Jonathan C. Krisko (N.C. Bar No. 28625)
Richard C. Worf (N.C. Bar No. 37143)
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536

       - and -

RAYBURN COOPER & DURHAM, P.A.
C. Richard Rayburn, Jr. (N.C. Bar No. 6357)
Albert F. Durham (N.C. Bar No. 6600)
John R. Miller, Jr. (N.C. Bar No. 28689)
1200 Carillon, 227 West Trade Street
Charlotte, NC 28202
Telephone: (704) 334-0891

       - and -

PARKER POE ADAMS & BERNSTEIN, LLP
Daniel G. Clodfelter (N.C. Bar No. 7661)
Ashley A. Edwards (N.C. Bar No. 40695)
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 335-9054

ATTORNEYS FOR THE REORGANIZED DEBTORS